UNITED STATES ex rel. PASCHER v. KINKEAD et al., Local Board.

(Circuit Court of Appeals, Third Circuit.  April 1, 1918.)

No. 2367.

ARMY AND NAVY ☞20—SELECTIVE DRAFT—DECISIONS OF DISTRICT BOARD.

Under Selective Draft Act May 18, 1917, c. 15, § 4, 40 Stat. 79, giving local boards power to hear and determine all questions of exemption, and declaring that the decision of the district boards on appeal shall be final save only as the President may see fit to modify or reverse, a decision of the district board affirming that of the local board, which denied relator's claim to exemption on the ground that he was an alien enemy and had not become a citizen by virtue of his father's naturalization, cannot be disturbed by the courts where the appeal to the district board was fairly heard and determined.

Appeal from the District Court of the United States for the District of New Jersey; Thos. G. Haight, Judge.

Application by the United States, on the relation of Max Pascher, for writ of habeas corpus against Eugene F. Kinkead and others, acting as Local Board, etc.  From a judgment discharging the writ and remanding relator (248 Fed. 141), relator appeals.  Affirmed.

William S. Bennet, of New York City, for appellant.

Andrew J. Steelman, of Jersey City, N. J., and the Assistant U. S. Atty., of Newark, N. J., for appellees.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

McPHERSON, Circuit Judge.  The relator, Max Pascher (or Pecker), was selected for active military service, but claims to be exempt on the ground that he was born, and is now, an alien enemy.  The District Court heard the case on petition and return, and the original papers referred to in these pleadings (with some others) have been laid before us.  An outline of the relevant facts will make clear the points for decision:

On June 5, 1917, the relator registered, stating that he was 29 years old, had been born in Austria in June, 1888, and was a naturalized citizen.  On August 14th he was approved as physically fit, and on the 16th he filed a claim and supporting affidavits asking for exemption as the son of dependent parents; but on the 22d the claim was denied by the local board, and two days later he was certified to the district board.  Early in September he appealed from the denial of his claim to be discharged on the ground stated, but the district board affirmed the decision.  On October 11th he applied to the local board for a new hearing of his claim to be exempt, but he put it now on the ground that he was an alien enemy, asserting that he was born on May 15, 1887, instead of in June, 1888, and was therefore of age when his father was naturalized on June 29, 1908.  The local board took up his case again, considered the new ground, reviewed the additional evidence submitted, and rejected the claim on or about November 23d.  On December

18th the local board sent him a questionnaire, and on December 27th he filed his answers, renewing his contention and asking to be classified in No. 5 E as an alien enemy. On February 1, 1918, the board denied the request, saying: "Registration card also shows he is a citizen. Has also voted here"—and classified him in No. 1 A. The fact of voting appeared from one of the relator's answers, in which he said he had voted in New York City "thinking myself a citizen." The return to the habeas corpus states that:

The board's refusal to classify him as an alien enemy was reached after due and careful consideration had been given to " * * * all the papers and records in the possession of the said local board in any way concerning or appertaining to the said relator, and particularly careful consideration was given to the registration card theretofore filed by the said relator, a copy of which is hereto annexed and marked 'Exhibit A,' and to the claim for exemption and affidavits thereto and therewith, copy of which is Exhibit C annexed hereto, and to the answers made under oath by the said relator upon form No. 1001, which is hereto annexed and marked 'Exhibit G,' as well as a copy of what purports to be the proceedings in naturalization of one Mendel Joel Pecker, and what purported to be affidavits of Mendel J. Pecker, Taube Pecker, and Max Pascher, which said papers had been forwarded to the said local board by one who represented himself to be an attorney for the said relator, a copy of which papers or substantially the same is affixed to the petition for writ of habeas corpus and which is therefore not annexed to this return, and, after a careful consideration of all papers above mentioned and the records of the said local board, the members of the said local board did by unanimous vote, duly taken, deny the said claim for deferred classification of the said relator."

On February 8th he appealed to the district board, and the return states that on February 18th that body "duly considered the said appeal and the records and papers sent therewith by the said local board, and affirmed the action of the said local board and classified the said relator under class 1, division A." Thereupon the relator was ordered to report for service, and on February 24th he did report and is now in military custody. On the same day Judge Haight granted a writ of habeas corpus, and on February 27th remanded the relator, filing an opinion published in 248 Fed. 141.

We shall add little to what has been so well said by him. No doubt, if the relator were really an alien enemy, he would not be subject to call for active military service (section 2); but the question of his status—whether he is still an alien enemy, or became a citizen by virtue of his father's naturalization in 1908—is a question of fact, and the duty of deciding such a question is in the first instance committed to the local board (section 4):

"Such (local) boards shall have power within their respective jurisdictions to hear and determine, subject to review as hereinafter provided, all questions of exemption under this Act, and all questions of, or claims for, including or discharging individuals or classes of individuals from the selective draft, which shall be made under rules and regulations prescribed by the President, except," etc.

From the decision of the local board an appeal lies to the district board (section 4):

"Such district boards shall review on appeal, and affirm, modify, or reverse any decision of any local board having jurisdiction in the area in which

any such district board has jurisdiction under the rules and regulations prescribed by the President."

In addition the district board has exclusive original jurisdiction over a described class of questions, "not included within the original jurisdiction of such local boards"; but, as the question now before us is included within the original jurisdiction of the local board, it is not a question over which the district board has "exclusive original jurisdiction," but is one to be heard by that body only on appeal. It was so heard and decided, and as "the decision of such district boards shall be final" (section 4)—a provision within the power of Congress to ordain—we have only to inquire whether the relator's appeal was fairly heard and determined. Upon this point we see no room for doubt. The return shows what was done, and we think it plain that every item of evidence, either good, bad, or indifferent, that is now before us, was considered and passed on. There is no proof or assertion that anything else was offered to the board and rejected, or indeed that any other evidence is available that was overlooked or has since been discovered. The hearing having been fair and adequate, and there being evidence to support the finding, we have no power to reach a different conclusion.

The order remanding the relator is affirmed.