## DRUMHELLER v. BERKS COUNTY LOCAL BOARD NO. I et al.
### No. 8012.

Circuit Court of Appeals, Third Circuit.
Argued July 9, 1942.

Decided Aug. 21, 1942.

Darlington Hoopes, of Reading, Pa., for appellant.

Edward A. Kallick, of Philadelphia, Pa. (Francis M. Shea, Asst. Atty. Gen., Gerald A. Gleeson, U. S. Atty., of Philadelphia, Pa., Sidney J. Kaplan, Sp. Asst. to the Atty. Gen., and Martin Norr, Atty., Department of Justice, of Washington, D. C., on the brief), for appellees.

Before BIGGS, MARIS and GOODRICH, Circuit Judges.

BIGGS, Circuit Judge.

Leland W. Drumheller was classified by the Berks County Local Board No. 1 of the Selective Service System in class IV-E as a conscientious objector and was about to be assigned by the Board to a civilian public service camp. Drumheller filed a petition in the court below praying for a writ of certiorari and for an injunction to restrain the Board from sending him to such a camp pending the disposition of issues sought to be raised by him upon the writ. The court below directed the writ to issue but thereafter granted a motion to dismiss the petition. The appeal at bar followed.

The facts are as follows. Drumheller duly registered as required by Section 2 of the Selective Training and Service Act of 1940, 50 U.S.C.A. Appendix § 302. He is and was a member of that sect known as Jehovah's Witnesses. He alleges that he submitted to the Board " * * * full and conclusive proof that he was and is an ordained minister of Jehovah God * * *" and that he has given up all secular occupations and has become a "Pioneer" for the Watchtower Bible and Tract Society. If the Board had classified him as a regular or duly ordained minister of religion pursuant to Section 5(d), 50 U.S.C.A. Appendix § 305(d) he would have been exempt from training and service. Drumheller alleges that he was not so classified because the Board denied him a fair hearing, acted capriciously and in gross abuse of its discretion. He appealed to the Appeal Board which affirmed the decision of the Local Board.

The fifteenth paragraph of his petition alleges, "That petitioner believes that if he

were to report to such a [civilian public service] camp, in accordance with * * * [the] assignment [of the Board], he would violate his covenant with Almighty God, which is to bear witness to His truth, and petitioner therefore will refuse to go to such a camp and will be treated as a delinquent and prosecuted under the Selective Service and Training Act * * *."[1] Drumheller's counsel argued in this court that it would be a violation of his client's conscience for him to go to the railroad station whence selectees are taken to camps and there submit himself to the military or civilian authorities; that Drumheller felt that he must be free to preach and that he could not voluntarily impair his function as a preacher by submission to any other authority than that of God. If he had been assigned to camp, had submitted himself to the civilian authorities which have charge of the civilian public service camps, he could have petitioned the court for a writ of habeas corpus. Upon the issuance of that writ the entire record which the Local Board had before it would have been brought into court and if the Board had acted capriciously, arbitrarily or in gross abuse of its discretion the court below could have so found and Drumheller could have been discharged from custody. See the decision of this court in United States v. Grieme, 128 F.2d 811. As we have already indicated Drumheller takes the position that he could not avail himself of the benefit of a writ of habeas corpus. Can Drumheller raise the questions which he seeks to have the lower court determine, by writ of certiorari, or, putting technicalities as to forms of writs to one side, is he entitled in the present proceeding to the relief he seeks?

■■ At common law the writ of certiorari was a writ issued by a superior court of record to an inferior court of record or other tribunal or officer, exercising a judicial function requiring the certification and return by the latter of some proceeding then pending, or the record and proceedings in some cause already terminated, where the procedure was not in accordance with the rules of common law. The writ was exercised to make the record "more certain" before the higher tribunal and to authorize employment of the writ the act complained of had to be a judicial act and not executive or legislative. In the Mat-

ter of Mount Morris Square, 2 Hill, N.Y., 14. See, also, People v. Rochester, 21 Barb., N.Y., 656, Beaverton Tp. v. Lord, 235 Mich. 261, 209 N.W. 122 and see United States v. Rauch, D.C., 253 F. 814. We are of the opinion that the functions of the Selective Service Boards under the Selective Training and Service Act are purely administrative and executive and that these Boards do not possess judicial or quasi-judicial powers. The learned District Judge disposed of the petition upon this ground alone and we think he was justified in doing so. Our conclusion in this respect is supported by two of the very decisions cited by the appellant. In Degge v. Hitchcock, 229 U.S. 162, 33 S.Ct. 639, 57 L.Ed. 1135, a writ of certiorari was denied when one was sought in order to review an order of the Postmaster General, and in Re 620 Church St. Corp., 299 U.S. 24, 57 S.Ct. 88, 81 L.Ed. 16, certiorari was granted to review the legality of an action of a bankruptcy court.

■ But assuming, in view of the importance of the question involved, that a board, similar to those created under the Selective Training and Service Act, must be deemed to be a quasi-judicial body and exercises judicial functions and that a District Court of the United States is its superior tribunal, an assumption quite unjustified by any statutory warrant, none the less a writ of certiorari will not lie to enable a superior court to pass upon, revise or reverse the decision of a lower tribunal as to matters of fact. Allison v. Local Board No. 61, D.C., 43 F.Supp. 896; Shimola v. Local Board No. 42, D.C., 40 F.Supp. 808. Compare United States v. Rauch, supra; In re Kitzerow, D.C., 252 F. 865. We believe that there are no cases to the contrary. The question as to whether Drumheller was a regular or duly ordained minister of religion and, therefore, entitled to exemption from training or service is one of fact. This very question, as we pointed out in United States v. Grieme, supra [128 F.2d 814], is one which "from its very nature, is committed by the Act to the determination of the competent local draft board."

Section 10(a) (2) of the Selective Training and Service Act, 50 U.S.C.A. Appendix § 310(a) (2), provides that the decisions of the local boards shall be final except where an appeal is authorized in accordance with

---

[1] Counsel for the petitioner and the United States have stated to this court that the petitioner is already serving a sentence imposed by the District Court of the United States for the Eastern District of Pennsylvania for failure to obey the Board's assignment.

such rules and regulations as the President may prescribe. The language employed in Section 10(a) (2) is substantially identical with that used in Section 4 of the Selective Draft Act of 1917, 50 U.S.C.A. Appendix § 204. The Selective Training and Service Act of 1940 (precisely as did the Selective Draft Act of 1917) contemplates a rapid disposition by selective service boards of the eligibility and availability of the male citizens of this country for military service. We think that nothing could prove more disruptive to the smooth functioning of the Selective Training and Service Act than to permit an individual to refuse training or service, meanwhile employing a writ of certiorari to carry his case from his local board through the courts.

Drumheller should have delivered himself to the authorities as all citizens of this country in like position are required by law to do. He then could have raised the question by writ of habeas corpus of whether his local board had acted in an arbitrary or capricious manner or denied him a full and fair hearing.[2] He says that for him to deliver himself even into the hands of civilians for civilian labor would be a breach of his covenant with God. We do not question Drumheller's sincerity in making such a statement, but he is none the less subject to all the laws of the United States [3] which govern other men in their duty to their country.

The writ of certiorari will not lie. Accordingly the order of the court below is affirmed.

### JACOBS v. READING CO.
#### No. 7883.

Circuit Court of Appeals, Third Circuit.
Argued March 6, 1942.

Decided Aug. 21, 1942.

[2] See United States v. Grieme, supra; United States ex rel. Pasciuto v. Baird, D.C., 39 F.Supp. 411, 413; United States ex rel. Errichetti v. Baird, D.C., 39 F.Supp. 388, 391, 392; Application of Greenberg, D.C., 39 F.Supp. 13, 16; United States ex rel. Filomio v. Powell, D.C., 38 F.Supp. 182, 186, and Dick v. Tevlin, D.C., 37 F.Supp. 836, 838.

[3] The consequences of the success of

George Gildea, of Trenton, N. J. (Katzenbach, Gildea & Rudner, of Trenton, N. J., on the brief), for appellant.

William Paul Allen, of New York City (John J. Corcoran, Jr., of Jersey City, N. J., on the brief), for appellee.

Before BIGGS, CLARK, and JONES, Circuit Judges.

---

the appellant's argument would be sweeping. He could not be compelled to obey a subpœna to respond for jury duty or be compelled to become a member of a posse comitatus or be required to undertake any other duty which citizens must perform in civil life. Organized society could not function if many persons were permitted to have the privilege of refusing to do their duty as citizens when called upon because of covenants believed by them to have been made with God.