**Ex parte CATANZARO.**

**Appeal of CATANZARO.**

**No. 8240.**

Circuit Court of Appeals, Third Circuit.

Argued April 21, 1943.

Reargued May 14, 1943.

Decided Sept. 23, 1943.

BIGGS and MARIS, Circuit Judges, dissenting.

———◆———

Abram Waks, of Paterson, N. J., for appellant.

Vincent E. Hull, Asst. U.S. Atty., of Trenton, N.J., and Nathan T. Elliff, of Washington, D.C. (Charles M. Phillips, U.S. Atty., of Trenton, N.J., on the brief), for appellee.

Before BIGGS, MARIS, JONES, and GOODRICH, Circuit Judges, and GANEY, District Judge.

GOODRICH, Circuit Judge.

The petitioner was held in the custody of the United States Marshal for the district of New Jersey on a charge of violation of the Selective Training and Service Act of 1940, 50 U.S.C.A. Appendix, § 301 et seq., because he failed to report for induction on June 1, 1942, as directed by his Local Draft Board. He filed his petition and applied for a writ of habeas corpus in the United States District Court for the District of New Jersey. The application was denied by the District Judge and the petitioner appealed to this Court.

The first point made by the United States attorney is the suggestion that the controversy has now become moot because, following the denial of the writ,

the petitioner has been convicted of violation of the Selective Service law and is now in the federal penitentiary at Lewisburg, Pennsylvania, and no longer in the custody of the United States Marshal. We have no disagreement with the proposition of the case relied upon by the government to the effect that the Court will not decide a moot point. See Voloshin v. Ridenour, 5 Cir., 1924, 299 F. 134. But that undisputed proposition does not help us here.

The record from the court below closes with the appeal by petitioner from the denial of the writ. All we know of petitioner's subsequent trial and imprisonment is what his counsel and government counsel have told us. There is nothing in the record to indicate that he is still not within the custody of the United States Marshal.

Furthermore, we do not believe that passing about of the body of a prisoner from one custodian to another after a writ of habeas corpus has been applied for can defeat the jurisdiction of the Court to grant or refuse the writ on the merits of the application. It is a general rule of law that where one has become subject to the jurisdiction of a court, the jurisdiction continues in all proceedings arising out of the litigation such as appeals and writs of error. 1 Beale, The Conflict of Laws (1935) § 76.1. This general rule is particularized as to habeas corpus proceedings in Rule 45, par. 1 of the Rules of the Supreme Court, 28 U.S.C.A. following section 354, which provides: "Pending review of a decision refusing a writ of habeas corpus, the custody of the prisoner shall not be disturbed." See 8 F.C.A. (1937) p. 601. This has been the rule of the Court since 1886. 117 U.S. 708; In re McKane, C.C.S.D.N.Y.1894, 61 F. 205. An identical provision appears in Rule 17, par. 1 of the Rules of this Court (1942). It states: "If Writ Refused. Pending review of a decision refusing a writ of habeas corpus, the custody of the prisoner shall not be disturbed." The only way the Marshal could explain an inability to produce the petitioner in response to the writ,

if issued, would be to set up a violation of the rule of this Court, which might serve as a confession, but hardly an avoidance. We think it clear that whatever may be the rights the petitioner has through his application for a writ of habeas corpus, they are not lost by whatever may have been done to him between his application and the decision of his case on appeal.

That brings us, then, to the merits. Catanzaro alleges that he registered under the Selective Service law and that he claimed exemption as a regular and duly ordained minister of religion. He says that the Local Board and the Appeal Board of the State of New Jersey refused to consider the proof submitted by the prisoner of his ministerial status, that he was denied a fair hearing and that the Boards abused their powers and that he had exhausted all the remedies open to him under the Selective Service system. The question presented is, therefore, whether habeas corpus is open to a registrant to review the action of the persons and bodies charged with the administration of the Selective Service law following his refusal to obey an order for induction but prior to his prosecution for such disobedience.

A substantial and mounting body of authority now holds that a defendant prosecuted for failure to obey an order to report for induction may not tender as a defense that his Draft Board acted unfairly or arbitrarily in making the order. United States v. Grieme, 3 Cir., 1942, 128 F.2d 811; Fletcher v. United States, 5 Cir., 1942, 129 F.2d 262; United States v. Bowles, 3 Cir., 1942, 131 F.2d 818, affirmed on other grounds, 1943, 319 U.S. 33, 63 S. Ct. 912, 87 L.Ed. 1194; United States v. Kauten, 2 Cir., 1943, 133 F.2d 703.[1] Nor may the registrant, prior to induction, have his classification reviewed by certiorari. Drumheller v. Berks County Local Board No. 1, 3 Cir., 1942, 130 F.2d 610.

In the Kauten case, supra, 133 F.2d at page 706, the court called attention to § 10(a) (2) of the statute[2] as showing that "Congress intended so far as possible

---

[1] The Sixth Circuit assumed for discussion, without deciding, that the decision of a Draft Board may be collaterally attacked in a prosecution for violation of the Selective Service Act, but found that in the particular case there had been a fair hearing and the conclusion of the Board was supported by substantial evidence. Rase v. United States, 1942, 129 F.2d 204.

[2] "The decisions of such local boards shall be final except where an appeal is authorized in accordance with such rules and regulations as the President may prescribe."

to prevent delay and even the disruption of the administration of the Selective Training and Service Act by court interference with the various steps that the administrative boards are required to take." The court goes on to point out that induction is a contingent matter until after the medical examination of the inductee has been completed and that orders by Local and Appeal Boards are but steps leading up to a final acceptance or rejection by the Army. "Only when the Army makes its choice are all the administrative steps taken and is the administrative proceeding concluded."

It may be assumed that a judicial review of Draft Board action somewhere along the way between registration and the registrant's final acceptance by the armed forces would be more even and more objective than the verdicts of various juries asked to try a Draft Board's fairness as a defense in a criminal prosecution. To that extent the interposition of habeas corpus proceedings between registration and induction would be a less serious interference with the functioning of the draft machinery than permitting a defendant's attack on his Draft Board to come into a trial for disobeying its orders. Nevertheless it would interject court review before "the administrative proceeding [is] concluded."

The Congress did not, in the Selective Service statute talk about judicial review of Draft Board action: "The decisions of such local boards shall be final * * *" is the language used. If there is to be a court review, as distinguished from the appeals provided in the regulations authorized by the statute, it must be because judicial review is a constitutional right which courts must provide whether a statute authorizes it or not. This Court has said, though not decided, that a review through habeas corpus proceedings may be had where the registrant presents himself for induction in accordance with his Board's order and the terms of the law. See the Grieme, Drumheller and Bowles cases, supra. The Second Circuit, by a divided court, has recently so held. United States v. Downer, 1943, 135 F.2d 521. And the Sixth Circuit reviewed the propriety of an inductee's classification, though it upheld the judgment denying the writ. Benesch v. Underwood, 1942, 132 F.2d 430. This likewise is assumed to be law by Mr. Justice Douglas in his concurring opinion

in Hirabayashi v. United States, 1943, 63 S.Ct. 1375, 1389, 87 L.Ed. 1774, where he says: "There are other instances in the law where one must obey an order before he can attack as erroneous the classification in which he has been placed. Thus it is commonly held that one who is a conscientious objector has no privilege to defy the Selective Service Act and to refuse or fail to be inducted. He must submit to the law. But that line of authority holds that after induction he may obtain through *habeas corpus* a hearing on the legality of his classification by the draft board." (citing authorities).

But the petitioner here has not qualified himself for judicial review, whatever its scope may be, under the rule of the above authorities. To grant it to him at the point he has chosen would not, we believe, conform to the will of Congress. Nor is it required for the protection of his constitutional rights.

Affirmed.

BIGGS, Circuit Judge (dissenting).

The allegations of Catanzaro's petition for a writ of habeas corpus assert that he is a regularly and duly ordained minister of the Watchtower Bible and Tract Society of Brooklyn, New York, and a member of the religious sect known as Jehovah's Witnesses. He charges in substance that the selective service tribunals in his case acted arbitrarily and capriciously, without regard to the evidence and contrary to law, and that he was denied a fair hearing. He asserts that he has exhausted his administrative remedies. The court below refused to issue the writ and dismissed the petition.

In affirming that decision, a majority of this court (putting to one side their additional reason that the administrative processes provided by the Selective Training and Service Act have not been completed) hold that a registrant may enjoy the benefits of a writ of habeas corpus only if he has obeyed the order of his local draft board and has placed himself in the custody of the military authorities, thus going one step further than this court went in United States v. Grieme, 3 Cir., 128 F.2d 811. Cf. Drumheller v. Berks County Local Board No. 1, 3 Cir., 130 F.2d 610. Since Catanzaro did not obey the order of his board and report for induction, say the majority, he has made himself liable to the penalties imposed by Section

11 of the Act, 50 U.S.C.A. Appendix, § 311, and therefore is not wrongfully deprived of his liberty by his arrest. But I think the majority overlook the fact that the nature and scope of the writ of habeas corpus in the courts of the United States have been greatly enlarged and liberalized.[1] The writ goes to the very heart of the reasons for an individual's detention and provides a summary means for determining whether the petitioner has been illegally deprived of his liberty without due process of law.

It is clear that a registrant is deprived of his liberty when he is arrested because he fails to report for induction. The restraint is wrongful if the order of the draft board violated by the registrant was invalid, unless it be true that the Selective Training and Service Act provides that the order must be obeyed in any event and under any circumstances. The Act, however, does not so provide. I see a glaring inconsistency in the proposition that the registrant who obeys an invalid order of his draft board and reports for induction may avail himself of the writ as the means of having the order adjudged a nullity, while the registrant who does not obey a similarly invalid order by reporting for induction and in consequence is arrested may not do so. The majority hold that the validity of the action of the draft board may be tested by the writ in the first instance, but not in the second. I think that they do not give an adequate explanation for this distinction. True, in the first instance the writ issued at a point later in time and after the registrant had executed the order of the board. The answer of the majority,

as I understand it, is that the point in time is immaterial and that the important element consists of the fact that because the registrant had not fulfilled the obligations imposed upon him by Section 3, 50 U.S.C.A. Appendix, § 303, he has thereby incurred the penalties imposed by Section 11, 50 U.S.C.A. Appendix, § 311; that therefore he was not unlawfully deprived of his liberty.

In other words, the majority make a distinction between the validity of the punitive sanction of the Act when invoked solely by reason of the violation of an induction order and the validity of the induction order itself. The sanction, it is said, is unassailable even though the induction order, the violation of which is the sole basis for its imposition, is a mere nullity. But I think that the indefensible nature of this distinction is demonstrated by the case of a registrant who is within one of the groups exempted from training and service by the provisions of Section 5, 50 U.S.C.A. Appendix, § 305, and is ordered none the less to report for induction because his draft board has acted capriciously or arbitrarily or has denied him a fair hearing in respect to his status. Surely it may not then be said that the registrant (who has exhausted his administrative remedies) has incurred the duty of reporting for induction and that if he fails to do so he incurs the penalties imposed by Section 311.

My position may be summed up as follows. There is no section of the Act which provides that everyone must obey any order of a draft board to report for induction. Categories of exempted or deferred

---

[1] In Frank v. Mangum, 237 U.S. 309, 332, 35 S.Ct. 582, 589, 59 L.Ed. 969, the Supreme Court stated on grant of the writ that "* * * the obligation resting upon us, as upon the district court, [is] to look through the form and into the very heart and substance of the matter. * * *" We may contrast with this the broader statement of Mr. Justice Holmes in his dissenting opinion in the same case, Id., 237 U.S. at page 346, 35 S.Ct. at page 595, 59 L.Ed. 969, which we think is now the law; viz., "* * * habeas corpus cuts through all forms and goes to the very tissue of the structure. It comes in from the outside, not in subordination to the proceedings, and although every form may have been preserved, opens the inquiry whether they have been more than an empty shell." In

the recent case of Holiday v. Johnston, 313 U.S. 342, 351, 550, 61 S.Ct. 1015, 1018, 85 L.Ed. 1392, Mr. Justice Roberts stated, "We have recently emphasized the broad and liberal policy * * * respecting the office and use of the writ of habeas corpus in the interest of the protection of individual freedom to the end that the very truth and substance of the cause of a person's detention may be disclosed and justice be done." See also Waley v. Johnston, 316 U.S. 101, 104, 62 S.Ct. 964, 86 L.Ed. 1302; Walker v. Johnston, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830; Smith v. O'Grady, 312 U.S. 329, 61 S.Ct. 572, 85 L.Ed. 859; Johnson v. Zerbst, 304 U.S. 458, 465–467, 58 S.Ct. 1019, 82 L.Ed. 1461; and Mooney v. Holohan, 294 U.S. 103, 113, 55 S.Ct. 340, 79 L.Ed. 791, 98 A.L.R. 406.

registrants are set up by Section 5. If the registrant comes within one of these categories and is denied a fair hearing, or if his local board acts capriciously or arbitrarily or contrary to law in determining his status, the registrant (having exercised his administrative remedies to the full) is entitled to the benefits of the writ, if he is arrested for failure to obey the void order requiring him to report for induction.[2] In a habeas corpus proceeding the court ought to look through the legalistic distinction which the majority would draw between the registrant's violation of the Act because of failure to obey the order and his violation of the order itself. The vital and fundamental thing is that the registrant has been deprived of his liberty because and only because of his refusal to obey an order which was wholly void since it was made without due process of law. Under such circumstances the name or nature of the agency or of the officer of the United States who holds him in custody is immaterial.

Nor can I agree with the ruling of the majority that the administrative processes are not completed until, in the language of United States v. Kauten, 2 Cir., 133 F.2d 703, 706, "the Army makes its choice" and accepts the registrant for service after he has passed his physical examination. The registrant is in the custody of the military authorities from the moment that he has reported for induction, even though those authorities may see fit to reject him subsequently.

I think the writ should issue in the case at bar for, as I have indicated in the first paragraph of this opinion, Catanzaro asserts that he is entitled to the exemption provided by Section 5(d) and that he has been denied a fair hearing.

I am authorized to state that Judge MARIS joins in this dissent.

[2] In making these statements I am not unaware that the courts have held that the registrant is entitled to habeas corpus to test the validity of actions of the draft boards after induction. In respect to the 1863 Draft Act, 12 Stat. 731, see Stingle's case, In re Stingle, Fed.Cas.No.13,458. In respect to the Selective Draft Act of 1917, 50 U.S.C.A. Appendix, § 201 et seq., see Arbitman v. Woodside, 4 Cir., 258 F. 441. Under the Act sub judice, see the decision of this court in United States v. Grieme, 3 Cir., 128 F.2d 811.

It has been held that a review of the actions of a draft board upon issuance of habeas corpus are limited to the issues of whether the boards had jurisdiction of the registrant and had afforded him a fair hearing. See United States v. Kinkead, D.C., 248 F. 141, affirmed by this court, 250 F. 692; Franke v. Murray, 8 Cir., 248 F. 865, L.R.A.1918E, 1015; Shimola v. Local Board No. 42, D.C., 40 F.Supp. 808. It has also been held that a writ of habeas corpus is available to correct a classification made by a draft board and based upon a mistake of law. United States v. Baird, D.C., 39 F.Supp. 411.