Valentin CHAVEZ–RIVAS, Petitioner,

v.

Keith OLSEN, Warden; John Ashcroft, Attorney General; Director, Immigration and Naturalization Service, Respondents.

No. CIV.A. 01–1018.

United States District Court,
D. New Jersey.

April 1, 2002.

---

Richard Coughlin, Federal Public Defender, Camden, NJ, for Petitioner, Valentin Chavez–Rivas.

Christopher J. Christie, United States Attorney, Louis J. Bizzarri, Assistant United States Attorney, Camden Federal Building and U.S. Courthouse, Camden, NJ, for Respondents, Keith Olsen, John Ashcroft, and Director, Immigration and Naturalization Service.

## OPINION

ORLOFSKY, District Judge.

Petitioner, Valentin Chavez–Rivas ("Chavez–Rivas"), seeks a writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2241. The Respondents have moved to Dismiss the Petition, or alternatively, to transfer the case to the United States District Court for the Western District of Tennessee. The Respondents' Motion presents this Court with the novel question of whether a District Court may continue to exercise jurisdiction over a habeas corpus petition filed by a petitioner in the custody of the Immigration and Naturalization Service ("INS") when the petitioner is transferred by the INS to another District and detained by a "custodian" over whom the original District Court cannot exercise personal jurisdiction. More precisely, this Court must decide whether in these circumstances the Attorney General of the United States can be deemed to be the petitioner's "custodian" in the transferee District.

For the reasons that follow, I conclude that the Attorney General of the United States can be considered to be the "custo-

dian" of the petitioner in the transferee District in a case such as this, when a resolution of the merits of the habeas corpus petition can be decided on a paper record without the necessity for an evidentiary hearing, and without the transportation of the petitioner and witnesses from a distant location to the original District Court.

## I. FACTS AND PROCEDURAL HISTORY

Valentin Chavez–Rivas ("Chavez–Rivas") is a Mariel Cuban [1] under final order of deportation. Chavez–Rivas finds himself in these straits as a result of multiple criminal convictions since his arrival in the United States. He is currently under indefinite INS detention because his country of origin, Cuba, will not consent to his return.

On March 2, 2001, Chavez–Rivas, while confined at the Federal Correctional Institution at Fairton, New Jersey ("FCI Fairton"), filed a *pro se* petition for a writ of habeas corpus with this Court, pursuant to 28 U.S.C. § 2241. The petition named as respondents Keith Olsen, the Warden of FCI Fairton; John Ashcroft, the Attorney General of the United States; and the Director of the INS (collectively "the Government"). In his petition, Chavez–Rivas claims that his continued and indefinite detention by the INS violates his rights under the Fifth and Eighth Amendments to the United States Constitution. *Id.*

On April 16, 2001, the Government filed an Answer to Chavez–Rivas's habeas corpus petition. Chavez–Rivas filed a Traverse in response to the Government's Answer on May 14, 2001. On August 7, 2001, I appointed Richard Coughlin, Esq., Federal Public Defender, to represent Chavez–Rivas in this habeas action. On August 8, 2001, Chavez–Rivas was transferred from FCI Fairton to the Federal Correctional Institution at Memphis, Tennessee ("FCI Memphis").

In response to the relocation of Chavez–Rivas to FCI Memphis, the Government filed the present motion to dismiss Chavez–Rivas's petition pursuant to 28 U.S.C. § 2241(a) [2] or, alternatively, to transfer the case to the United States District Court for the Western District of Tennessee pursuant to 28 U.S.C. § 1631. [3] The Government argues that this Court lacks jurisdiction to hear Chavez–Rivas's petition because only a District Court that has personal jurisdiction over the petitioner's immediate custodian, *i.e.*, the warden of the facility where the petitioner is being detained, may hear a habeas corpus petition. More specifically, the Government contends that the transfer of Chavez–Rivas to the Tennessee facility has divested this Court of jurisdiction to grant habeas relief in this case.

For the reasons set forth below, I find the Government's arguments to be without merit. Accordingly, I shall deny the Gov-

---

**1.** The Government defines "Mariel Cubans" as "Cubans who last came to the United States between April 15, 1980 and October 20, 1980, and were paroled into the United States." *See* Resp. Br. at 1.

**2.** 28 U.S.C. § 2241 provides, in relevant part:
(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the District Court and any Circuit Judge *within their respective jurisdictions.*
28 U.S.C. § 2241(a)(1994) (emphasis added).

**3.** 28 U.S.C. § 1631 provides, in relevant part:

Whenever a civil action is filed in a court ... or an appeal is noticed for or filed with ... a court ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was noticed or filed. ...

28 U.S.C. § 1631 (1994).

ernment's Motion to Dismiss Chavez–Rivas's petition, or alternatively, to transfer this case to the Western District of Tennessee.

## II. DISCUSSION

### A. Personal Jurisdiction Generally in § 2241 Habeas Corpus Petitions in the Third Circuit

Both the Supreme Court of the United States and the Third Circuit have held that the transfer of a habeas petitioner to another judicial district after the filing of a habeas corpus petition does not defeat the original District Court's jurisdiction to entertain the petition. *See Ex Parte Mitsuye Endo,* 323 U.S. 283, 304, 65 S.Ct. 208, 89 L.Ed. 243 (1944); *Ex parte Catanzaro,* 138 F.2d 100, 101 (3d Cir.1943) (Goodrich, J.). In *Endo,* the Supreme Court considered the habeas corpus petition of a Japanese American who had been placed in an internment camp and held that where a District Court originally acquires personal jurisdiction in a habeas case, the subsequent removal of the petitioner to another judicial district does not divest the original District Court of jurisdiction. 323 U.S. at 304, 65 S.Ct. 208. Moreover, just one year before the *Endo* decision, the Third Circuit stated unequivocally that the "passing about of the body from one custodian to another after a writ of habeas corpus has been applied for [cannot] defeat the jurisdiction of the Court" to hear a habeas petition. *Catanzaro,* 138 F.2d at 101. *See also Caballero v. United States,* 145 F.Supp.2d 550, 557 (D.N.J.2001) (following *Catanzaro* to determine that transfer of Mariel Cuban, INS-detainee petitioner to Colorado facility did not affect District Court's jurisdiction); *Fuller v. INS,* 144 F.Supp.2d 72, 85–87 (D.Conn.2000) (citing *Catanzaro* and holding that alien's deportation did not divest District Court of jurisdiction over habeas petition). The *Catanzaro* court

reasoned that a habeas petitioner should not be adversely affected "by whatever may have been done to him between his application and the decision of his case on appeal." 138 F.2d at 101.

While the Third Circuit has not recently revisited the issue of the transfer of a habeas petitioner to another judicial district before his petition is heard in the original district, it has addressed some closely related issues. For example, the Third Circuit has decided that, as a general matter, a § 2241 habeas petitioner must file the petition in the district where he is confined. *United States v. Kennedy,* 851 F.2d 689, 690–91 (3d Cir.1988); *United States v. Jack,* 774 F.2d 605, 607 n. 1 (3d Cir.1985). This rule derives from the Supreme Court's decision in *Braden v. 30th Judicial Circuit Court,* 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973), where the Court set forth guidelines regarding personal jurisdiction in cases involving § 2241 petitions. *See United States v. Ferri,* 686 F.2d 147, 158 (3d Cir.1982) (citing *Braden* for principle that a § 2241 habeas petition "must be sought from a District Court with jurisdiction over the custodian of the prisoner"), *cert. denied,* 459 U.S. 1211, 103 S.Ct. 1205, 75 L.Ed.2d 446 (1983).

The *Braden* Court, however, explicitly refused to promulgate any hard and fast rule limiting the jurisdictional reach of District Courts to the place of the petitioner's confinement. *Id.* at 500–501, 93 S.Ct. 1123. It established the principle that, as long as a court can reach the petitioner's custodian by service of process, it may entertain that petitioner's § 2241 habeas petition, even if the prisoner himself is confined outside that court's territorial jurisdiction. *Id.* at 495, 93 S.Ct. 1123. *Braden*'s flexible approach corresponds with the broad language of § 2241(a), which states merely that District Judges may

entertain habeas petitions "within their respective jurisdictions." 28 U.S.C. at § 2241(a).

■ Thus, this Court has jurisdiction over a § 2241 petitioner such as Chavez–Rivas if and only if it has jurisdiction over the petitioner's "custodian." I must therefore determine who may be properly considered Chavez–Rivas's "custodian" for the purposes of his § 2241 petition.

### B. Chavez–Rivas's Proper "Custodian" For Purposes of His § 2241 Petition

The Third Circuit has determined that, for purposes of § 2241 habeas petitions, a petitioner's "custodian" is usually "the warden of the prison within which the federal prisoner resides." *Kennedy*, 851 F.2d at 691. This general rule, however, is not without exceptions. *See id.* at 691 n. 4; *Bennett v. Soto*, 850 F.2d 161, 163 (3d Cir.1988) (holding that federal prisoner incarcerated in Pennsylvania may file § 2241 suit naming Virgin Islands Board of Parole); *see also Billiteri v. United States Bd. of Parole*, 541 F.2d 938, 948 (2d Cir. 1976) (noting that parole board may properly be considered a custodian when acting on prior conviction unrelated to custody by warden).

If the only proper custodian in this case is the Warden of FCI Memphis, this Court will not have jurisdiction to entertain Chavez–Rivas's habeas petition, because it lacks personal jurisdiction over the Memphis warden. *See Braden*, 410 U.S. at 495, 93 S.Ct. 1123. The warden of the Memphis facility does not have "continuous and systematic" contacts with New Jersey, and the present controversy does not "relate to or arise[ ] out of" contacts that the warden purposely established in New Jersey. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Therefore, I must determine whether there exists an-

other person who can serve as a "custodian" of Chavez–Rivas's, such as the Attorney General of the United States, who is both a proper custodian for § 2241 petitions and is also subject to the jurisdiction of this Court.

The Third Circuit has not decided whether, under circumstances similar to those presented in this case, the Attorney General may serve as a custodian for purposes of a habeas corpus petition. However, the Circuit has refused to declare the District Director of the INS a custodian in a habeas corpus proceeding where to do so would allow a District Court to exercise jurisdiction over a nationwide class of habeas petitioners, most of whom had no connection with the district where the petition was filed. *See Yi v. Maugans*, 24 F.3d 500, 502 (3d Cir.1994). The *Yi* case involved the habeas corpus petition of 300 Chinese nationals who were detained by the INS in New York harbor after illegally trying to enter the United States. *Id.* at 502. The INS transferred nearly half of these Chinese nationals to a facility located in the Middle District of Pennsylvania, where they individually filed habeas corpus petitions to challenge their final orders of exclusion. *Id.* Because the petitioners from the Middle District raised nearly identical issues in their respective petitions, the District Court consolidated these individual petitions into a single case. *Id.*

However, the District Court, finding that it lacked jurisdiction to entertain the petitions of the aliens located outside the Middle District, refused to certify a nationwide class consisting of the Chinese nationals. *Id.* The Third Circuit agreed that a court in the Middle District of Pennsylvania did not have jurisdiction to hear the petitions of the Chinese nationals being held outside the Middle District, and rejected the idea that the INS District Director could serve as a custodian in order

to confer such jurisdiction. *Id.* The court reasoned that if it found the District Director to be a proper custodian under the facts before it, then the Attorney General "could be considered the custodian of every alien and prisoner in custody because ultimately she controls the district directors and the prisons." *Id.* at 507.

Unlike the Chinese nationals detained outside of the Middle District of Pennsylvania in *Yi*, Chavez–Rivas filed his petition in the District in which he was originally incarcerated. Thus, a determination that the Attorney General is a proper custodian in this case would allow jurisdiction merely *to continue* following the transfer of a petitioner who properly filed a habeas petition in the first instance; it would not *create* jurisdiction over a habeas petitioner with little or no connection to the District of New Jersey. Nor would it encourage forum shopping or a flood of petitions in this or any jurisdiction. On the other hand, if the Third Circuit in *Yi* had allowed the District Director of the INS to serve as a custodian merely because he held the power to release the prisoner, the court would have created a rule that, in its outermost logical extension, would allow habeas corpus petitioners to file their petitions in any jurisdiction. This would lead to forum shopping, and might require the government to transport habeas petitioners unreasonable distances for hearings related to their petitions. Therefore, one can easily distinguish this case from *Yi* and its progeny. *But see Valdivia v. INS*, 80 F.Supp.2d 326, 333 (D.N.J.2000) (finding that "despite the practical reasons for considering the INS District Director ... to be the petitioner's custodian for habeas purposes, and despite the distasteful fact that the INS has in fact asserted that position in prior cases where it serves to defeat jurisdiction, I am constrained to follow [*Yi* ]").

Outside of the Third Circuit, some courts have held that, under appropriate circumstances, the United States Attorney General may serve as a custodian for habeas petitions. *See, e.g., Nwankwo v. Reno*, 828 F.Supp. 171, 176 (E.D.N.Y.1993) (holding that Attorney General was proper custodian over INS detainee subject to extended incarceration). The holdings of courts finding the Attorney General to be a proper custodian rest on the *Endo* Court's pragmatic concept of "custody." In *Endo*, the Supreme Court, in allowing the original District Court to retain jurisdiction, based its holding in part on the fact that "there [was] no suggestion that there is no one within the jurisdiction of the District Court who is responsible for the detention of [the] appellant and who would be an appropriate respondent." 323 U.S. at 304, 65 S.Ct. 208. The Court reasoned that since the Secretary of the Interior had the power to direct subordinates in any state to carry out an order directed to him to release the prisoner, the Secretary's presence in the district allowed the court to retain jurisdiction. *Id.* at 304–305, 65 S.Ct. 208. In *Nwankwo*, the Eastern District of New York applied similar logic in the context of INS detainees. There, the court stated that:

> While [the Attorney General] may have delegated to her subordinates physical custody of [the] petitioner as well as the determination concerning his detention, [she] is an appropriate respondent in a habeas corpus proceeding because she has the power to direct her subordinates to carry out any order directed to her to produce or release the petitioner.

828 F.Supp. at 174.

█ Given the "extraordinary and pervasive role that the Attorney General [of the United States] plays in immigration matters," the *Endo* Court's reasoning certainly applies in this case. *See Henderson*

*v. INS*, 157 F.3d 106, 126 (2d Cir.1998) (noting reasons why Attorney General would be considered proper respondent to INS detainee's habeas petition). First, Congress has consistently designated the Attorney General as the legal custodian of immigration habeas petitioners. *Id.; see also* 8 U.S.C. § 1226(a) (1999) (stating that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision of whether the alien is to be removed from the United States"). Congress has also named the Attorney General as a proper respondent in the majority of court actions reviewing the legality of removal orders. *Henderson,* 157 F.3d at 126; *see* 8 U.S.C. § 1252(b)(3)(A) (1999) (stating that in petitions for review, "[t]he respondent is the Attorney General"). "There is also no question that the Attorney General has the power to produce the petitioners, remains the ultimate decisionmaker as to matters concerning the INS, *see* 8 U.S.C. § 1103(a)(1), and is commonly designated a respondent in these cases, even when personal jurisdiction over the immediate custodian clearly lies." *Henderson,* 157 F.3d at 126. Basically, the Attorney General remains " 'in complete charge of the proceedings leading up to the order directing the [ ] removal [of aliens] from the country' and has 'complete discretion to decide whether or not removal shall be directed' " *Id.* (quoting *Ahrens v. Clark,* 335 U.S. 188, 199, 68 S.Ct. 1443, 92 L.Ed. 1898 (1948) (Rutledge, J., dissenting)).

In this case, Chavez–Rivas's habeas petition challenges the imposition, rather than the execution, of his indefinite incarceration. In other words, his petition challenges the actions of the Attorney General of the United States and the INS, rather than the warden of any particular facility. Indeed, Chavez–Rivas named both the Attorney General and the INS District Director as respondents in his petition. For these reasons, finding the Attorney Gener-

al to be a "custodian" of Petitioner appears particularly appropriate in this case. Moreover, while there is no suggestion that Chavez–Rivas was transferred to the Western District of Tennessee in an attempt to thwart his habeas filing in this Court, the Attorney General could theoretically do so if he or she were never found to be a custodian in a habeas case.

Despite the apparent soundness of finding the Attorney General to be a custodian in a case such as this, many courts have been reluctant to consider the Attorney General a custodian for the purposes of a habeas petition. *See Vasquez v. Reno,* 233 F.3d 688, 689 (1st Cir.2000) (stating that "as a general rule, the Attorney General is neither the custodian of [an INS detainee] in the requisite sense nor the proper respondent to a habeas petition").

The *Vasquez* court based its finding that the Attorney General should not be considered a custodian for habeas purposes in part on the language of § 2243, which states that a writ of habeas corpus "shall be directed to *the person* having custody of the person detained." 28 U.S.C. § 2243; 233 F.3d at 693. The court reasoned that this "singular language" describing the custodian, coupled with the fact that § 2243 "does not indicate that a petitioner may choose from an array of colorable custodians," demonstrates that there is only one proper custodian in a habeas petition: the warden of the prison where the petitioner is being held. *Vasquez,* 233 F.3d at 693.

I find the *Vasquez* court's textual analysis unpersuasive. First, I doubt whether Congress intended the article, "the," to have the dispositive significance the First Circuit attributes to it. I have always thought that "the" could mean "a" or "any" as easily as it could mean "that." For instance, "give me the ball," can be a request by a pitcher for any regulation base-

ball, or a demand by an irate parent for the particular item that has been bouncing around the living room. In a linguistically similar legal context, the phrase "the custodial parent" has often been interpreted to describe either of two (or even more) parents who share custody. *See Derek M. v. Raynolds,* 1990 WL 29197, at *3–*4 (D.Mass.1990); *In re Marriage of Braud,* 53 Cal.Rptr.2d 179, 185 (1996); *Reno v. Haler,* 743 N.E.2d 1139, 1141 (Ind.Ct.App. 2001); *Drury v. Drury,* 32 S.W.3d 521, 524 (Ky.Ct.App.2000); *Babbitt v. Babbitt,* 15 S.W.3d 787, 791 (Mo.Ct.App.2000); *Blaich v. Blaich,* 114 Nev. 1446, 971 P.2d 822, 824 (1998); *Bast v. Rossoff,* 91 N.Y.2d 723, 675 N.Y.S.2d 19, 697 N.E.2d 1009, 1010 (1998); *Grathwol v. Grathwol,* 285 A.D.2d 957, 727 N.Y.S.2d 825, 827 (2001); *Carlton v. Carlton,* 145 N.C.App. 252, 549 S.E.2d 916, 921, *rev'd on other grounds,* 354 N.C. 561, 557 S.E.2d 529 (2001); *State v. Wootten,* 170 Vt. 485, 756 A.2d 1222, 1225 n. 4 (2000); *State v. Inglin,* 224 Wis.2d 764, 592 N.W.2d 666, 670 (1999). Further, as I have noted in this Part, *supra,* the text of other provisions of the federal habeas statute suggests a more expansive view of habeas custody. Finally, *Vasquez* itself carves out potential exceptions to its general rule that only the warden of the prison where the petitioner is being held can serve as a custodian for habeas purposes. 233 F.3d at 696. Those exceptions are difficult to reconcile with any purported textual command that there be only one custodian. Therefore, any reliance on the *Vasquez* court's "plain meaning" textual arguments appears to be misplaced.[4]

Although the federal habeas statute is textually ambiguous, there are compelling policy reasons why the Attorney General should not normally be deemed a custodian of a habeas petitioner. *See Nwankwo,* 828 F.Supp. at 173–74. First, if the Attorney General were a proper custodian, a federal habeas petitioner could file his petition in any District Court in the Nation. This likely would result in rampant forum shopping and eventually a backlog of petitions in the jurisdictions where the law is favorable to habeas petitioners. *See Vasquez,* 233 F.3d at 694. Moreover, adopting a broad notion of who qualifies as a custodian might unnecessarily complicate habeas claims by forcing courts to undertake fact-intensive analyses of venue and forum non conveniens issues. *See id.* Perhaps most importantly, the Government might be called upon to transport prisoners across the country for hearings stemming from the petition. *See Nwankwo,* 828 F.Supp. at 174. Certainly, the Attorney General should not be deemed a custodian where to do so would produce such undesirable results.

In this case, however, the Government does not argue that Chavez–Rivas filed his petition in an effort to choose a forum that might be particularly sympathetic to his claims. On the contrary, Chavez–Rivas filed his § 2241 petition in good faith in the District of New Jersey, the District of his incarceration at that time. Viewing the Attorney General as a custodian in such a situation would not promote forum shopping or a flood of petitions in any particular jurisdiction. Central to the First Cir-

---

**4.** Relying on its view that the text of § 2243 permits only one conclusion, the *Vasquez* court also reasoned that if Congress had wanted to adopt a more expansive notion of who qualifies as a proper custodian, it could have passed legislation to that effect. *See* 233 F.3d at 694 (characterizing a broad construction of the term "custodian" as "rewriting the legal lexicon" and stating that "a legislative solution is preferable" to construing "custodian" broadly). That argument has rather less force if one concludes, as I do, that the statute is ambiguous. Where the political branches leave a policy gap in the implementation of the law, it is a court's obligation to fill in the gap as best it can.

cuit's holding in *Vasquez*, in which that court refused to consider the Attorney General a custodian, was the fact that the habeas petitioner in that case filed for relief "in a jurisdiction where neither he nor his immediate custodian was physically present." 233 F.3d at 695. In fact, the court distinguished *Vasquez* from *Endo* solely on that basis. *See id.*

Furthermore, this Court's retention of jurisdiction over Chavez–Rivas's habeas petition would not result in the Government or this Court bearing any unnecessary inconvenience or expense. Neither Chavez–Rivas nor the Government dispute the facts of this case. Thus, there is no need for a hearing that would require the transportation of Chavez–Rivas from Tennessee to New Jersey. As a result, finding the Attorney General to be a custodian in this case would require neither costly transportation of the petitioner, nor the resolution of any complex venue or forum *non conveniens* issues by any court.

Thus, although I respectfully disagree with the First Circuit's textual analysis of § 2243 and related statutory provisions, my disagreement with the *Vasquez* court is actually quite narrow. *Vasquez* noted in dicta that only under "extraordinary circumstances" should the Attorney General "be named as the respondent to an alien habeas petition." 233 F.3d at 696. Such circumstances, according to the court, include where "the INS spirited an alien from one site to another in an attempt to escape jurisdiction" and the petitioner can show "facts suggesting furtiveness" or "elements necessary to demonstrate bad faith." *Id.* I agree with the *Vasquez* court that the Attorney General may serve as a custodian for purposes of a habeas petition only in extremely limited circumstances. However, I do not think that a petitioner should shoulder the burden of proving that the Government acted in bad faith in order to prevent his transfer from divesting a District Court of jurisdiction over his habeas petition. It is unlikely that a habeas petitioner in the position of Chavez–Rivas would ever be able to meet such a burden. Where transfer is not the result of the petitioner's misconduct, I would not impose such a burden upon him. I would thus allow the Attorney General to serve as custodian in a habeas case under circumstances less "extraordinary" than those addressed in *Vasquez*.

■ Accordingly, I conclude that where an INS-detained habeas petitioner properly files a habeas petition in the district where he is incarcerated, and the petitioner is subsequently transferred to a facility outside of that district, the Attorney General of the United States may be deemed a "custodian" to allow the original District Court to retain jurisdiction over the habeas petition. Of course, if the disposition of the habeas petition were to require hearings that would require the Government to transport the petitioner a great distance, or at an inordinate expense, the District Court may transfer such a petition to another District "in the interest of justice." *See* 28 U.S.C. § 1631. This is consistent with the principle that habeas petitions should be filed in the district where the prisoner is confined, *see United States v. Kennedy*, 851 F.2d 689, 690–91 (3d Cir. 1988), as well as the *Endo* and *Braden* Courts' realistic approaches to personal jurisdiction in habeas cases. Finally, it allows the Court to consider Chavez–Rivas's petition without any unnecessary further delay.

**C. Personal Jurisdiction Over the Attorney General in Chavez–Rivas's § 2241 Petition**

My conclusion that the Attorney General may be deemed an appropriate custodian in this case does not, however, dispose of the Government's motion. The question

remains as to whether this Court may require the Attorney General to respond to a habeas petition in the District of New Jersey. 28 U.S.C. § 2241 authorizes district judges to issue writs of habeas corpus "within their respective jurisdictions." The *Braden* Court, interpreting this provision, found that as long as a court can reach the petitioner's custodian by service of process, it may entertain that petitioner's § 2241 habeas petition, even if the prisoner himself is confined outside that court's territorial jurisdiction. 410 U.S. at 495, 93 S.Ct. 1123; *Ali v. Gibson*, 572 F.2d 971, 973–74 (3d Cir.1978), *cert. denied*, 449 U.S. 1129, 101 S.Ct. 951, 67 L.Ed.2d 117 (1981).

F.R. Civ. P. Rule 4(i) provides specifically for service of process upon officers of the United States. Such service may be effected in part by "delivering a copy of the summons and of the complaint to the United States attorney for the district in which the action is brought. . . ."

■ Because the Attorney General, an officer of the United States, is subject to service of process in the District of New Jersey, this Court may exercise jurisdiction over the Attorney General for purposes of Chavez–Rivas's § 2241 habeas petition.

### III. CONCLUSION

For the reasons stated above, I shall deny the Government's motion to dismiss Chavez–Rivas's petition for a writ of habeas corpus, or, alternatively, to transfer the case to United States District Court for the Western District of Tennessee.

As this Court will retain jurisdiction in this matter, I must consider the merits of Chavez–Rivas's challenge to his continued detention. Accordingly, this Court directs the parties to file supplemental briefs in accordance with the schedule established in the attached Order on the following three issues:

(1) Whether the Cuban Review Plan, 8 C.F.R. § 212.12 (2001), is constitutional in light of the United States Supreme Court's opinion in *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), *see id.* at 2512–13 (Kennedy, J., dissenting) (stating that majority's construction of immigration statute might compel release of Mariel Cubans under indefinite INS detention);

(2) Whether this Court should apply a special narrowing construction of the Cuban Review Plan in order to avoid a possible constitutional question; and,

(3) Assuming the constitutionality of the Cuban Review Plan, whether the INS Cuban Review Panel violated the Due Process Clause by considering the fact that Chavez–Rivas was arrested for and/or charged with prior offenses, with no supporting evidence that he engaged in the charged conduct, in determining whether Chavez–Rivas would pose a threat to the community.

The Court shall enter an appropriate form of Order.

### ORDER

This matter having come before the Court on the motion of Christopher J. Christie, Esq., United States Attorney, Louis J. Bizzarri, Esq., Assistant United States Attorney, appearing on behalf of Respondent, Keith Olsen, Warden, and Richard Coughlin, Esq., Federal Public Defender, appearing on behalf of Petitioner, Valentin Chavez–Rivas ("Chavez–Rivas"); and,

The Court having considered the submissions of the parties, IT IS, for the reasons set forth in the Opinion filed concurrently with this Order, on this 1st day of April, 2002, hereby ORDERED that:

1. The Motion of Respondent, Keith Olsen, to Dismiss the Petition of Valentin

Chavez–Rivas for a Writ of Habeas Corpus, Pursuant to 28 U.S.C. § 2241, or, in the Alternative, to Transfer the Petition of Valentin Chavez–Rivas for a Writ of Habeas Corpus to the United States District Court for the Western District of Tennessee, pursuant to 28 U.S.C. § 1631, is DENIED; and,

2. The Petitioner and Respondent each shall file, within twenty (20) days of the date of this Opinion and Order, supplemental briefs on the following three issues:

(1) Whether the Cuban Review Plan, 8 C.F.R. § 212.12 (2001), is constitutional in light of the United States Supreme Court's opinion in *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), *see id.* at 2512–13 (Kennedy, J., dissenting) (stating that majority's construction of immigration statute might compel release of Mariel Cubans under indefinite INS detention);

(2) Whether this Court should apply a special narrowing construction of the Cuban Review Plan in order to avoid a possible constitutional question; and,

(3) Assuming the constitutionality of the Cuban Review Plan, whether the INS Cuban Review Panel violated the Due Process Clause by considering the fact that Chavez–Rivas was arrested for and/or charged with prior offenses, with no supporting evidence that he engaged in the charged conduct, in determining whether Chavez–Rivas would pose a threat to the community.

The Petitioner and Respondent each shall have ten (10) days thereafter in which to file any response to the opposing brief.