

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-18-2002

# Zayas v. INS

Precedential or Non-Precedential: Precedential

Docket No. 01-2564

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Zayas v. INS" (2002). *2002 Decisions.* Paper 739.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/739

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed November 18, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-2564

RANIEL PEREZ ZAYAS, Appellant

v.

IMMIGRATION & NATURALIZATION SERVICE

Appeal From the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 99-cv-01325)
District Judge: Honorable A. Richard Caputo

Argued: February 4, 2002

Before: SLOVITER and AMBRO, Circuit Judges,
and POLLAK, District Judge.*

(Filed: November 18, 2002)

Daniel I. Siegel, Esquire
James V. Wade, Esquire
Office of Federal Public Defender
100 Chestnut Street, Suite 306
Harrisburg, PA 17101-2540

_____

* The Honorable Louis H. Pollak, United States District Judge for the
Eastern District of Pennsylvania, sitting by designation.

Melinda C. Ghilardi, Esquire
 (Argued)
Office of Federal Public Defender
Kane Professional Building, Suite 2C
116 North Washington Avenue
Scranton, PA 18503-1800

Attorneys for Appellant

Robert D. McCallum, Jr.,
 Assistant Attorney General
Christopher C. Fuller,
 Senior Litigation Counsel
Lyle D. Jentzer, Esquire (Argued)
United States Department of Justice
Office of Immigration Litigation
United States Department of Justice
P.O. Box 878
Ben Franklin Station
Washington, D.C. 20044

Attorneys for Appellee

OPINION OF THE COURT

POLLAK, District Judge.

In this appeal, we consider the applicability to petitions for habeas corpus filed pursuant to 28 U.S.C. S 2241 of both (1) the "gatekeeping mechanism" by which 28 U.S.C. S 2244(b) limits the filing of second or successive petitions for habeas corpus, and (2) the "abuse of the writ" doctrine as expressed in the Supreme Court's decision in McCleskey v. Zant, 499 U.S. 467 (1991). We will affirm the District Court's decision dismissing the petition of appellant Raniel Perez Zayas for abuse of the writ.

I. FACTUAL AND PROCEDURAL BACKGROUND

Raniel Perez Zayas is a Cuban citizen who was paroled into the United States in 1966 at the age of two, pursuant to S 212(d)(5) of the Immigration and Nationality Act ("INA"), 8 U.S.C. S 1182(d)(5).1 In 1974 he acquired permanent

_____

1. The version of S 212(d)(5)(A) applicable to Zayas in 1966 provided: "The Attorney General may in his discretion parole into the United States

2

resident status retroactive to 1969. On March 23, 1990, Zayas was convicted in New York State Supreme Court, Queens County, of two felony offenses: attempted robbery in the second degree and criminal sale of cocaine in the fifth degree. He was sentenced to a prison term of one and one-third years to four years.

As a consequence of the conviction for the sale of cocaine, Zayas was ordered on January 22, 1991 by the Immigration and Naturalization Service ("INS") to show cause why he should not be deported. On January 10, 1992, he filed an application for relief under S 212(c) of the INA, 8 U.S.C. S 1182(c) (repealed effective April 1, 1997). Section 212(c) authorized the Attorney General to admit, in his or her discretion, an otherwise deportable alien who had established lawful domicile in the United States for seven or more years. Such relief was unavailable under the statute if the alien had committed two or more crimes of moral turpitude; aliens who were faced with deportation solely on account of having committed a drug offense were eligible for relief.2

Zayas's deportation hearing was scheduled for April 26, 1994; however, due to an intervening arrest and conviction on February 15, 1994 for attempted robbery in the second degree, his immigration case was administratively closed pending his release from state custody. The hearing was re-scheduled and held on January 16, 1997.

At the hearing, Zayas conceded the truth of all the allegations contained in the order to show cause, and again

applied to the Immigration Judge ("IJ") for waiver of

_____

temporarily under such conditions as he may prescribe for emergent reasons or for reasons deemed strictly in the public interest any alien applying for admission to the United States . . . ." 8 U.S.C. S 1182(d)(5)(A) (1964).

2. Section 212(c) was repealed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009-597 (1996). The repeal operated with respect to cases in which the INS instituted deportation proceedings on or after April 1, 1997; because the proceedings against Zayas had been instituted before that date, the repeal did not affect him.

3

inadmissibility under S 212(c). A few months earlier, Congress had enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996). Section 440(d) of AEDPA amended S 212(c) of the INA so as to render ineligible for discretionary relief an alien who had been convicted of various drug offenses, including the one for which Zayas had been adjudged guilty in 1990. In his January 16, 1997 decision, the IJ denied Zayas's application for S 212(c) relief and ordered Zayas deported to Cuba.

The deadline for seeking Board of Immigration Appeals ("BIA") review of the IJ's deportation order was February 18, 1997. Zayas -- detained and acting pro se-- drafted a "perfected appeal" challenging the IJ's decision. With respect to the S 212 (c) issue he wrote:

> A.) My case and my petition for 212-c Waiver "preceeds" the new laws . . . .
>
> B.) At this time, my Waiver for 212-c is pending and I made this fact known to the Immigration Judge . . . .
>
>  The language describing who may be eligible for 212-c Waiver states that a "permanent resident" (or green card holder) who has been in the U.S. for at least seven years at the time of filing must be considered. 8 C.F.R. Section 212(f)(2) . . .. When the description given is held in comparison to the circumstances of my case then, there can be no question that I am a suitable candidate for some form of 212 Waiver.
>
>  I must reiterate that I already have an application for 212-c pending with the I.N.S. and this information alone should have resulted in the Immigration Judge staying and or postponing any further action on my case until such time that as a final disposition regarding my 212-c Waiver is handed down.

The United States Constitution promises under the
Fourteenth (14) Amendment which in fact
guarantees "equal protection" to aliens and citizens

alike . . . . Not only has the spirit of the 14th
Amendment been broken but, in the partial manner
in which the Judge decided this, the actual letter of
the law is being blatantly broken as well. . . .

Furthermore, I file[d] an "order to show cause" and
the accompanying 212-c Waiver on the INS and the
Attorney General's Office dated 1991, and[there]
has been no disposition as of yet . . . . Both the show
cause and the 212-c Waiver were file[d] years before
any of the recent changes in the INA Law went into
effect.

According to Zayas, he mailed his notice of appeal from
prison on February 16, 1997, two days before the February
18 filing deadline; however, Zayas's appeal was not received
by the BIA until February 24. The BIA dismissed the appeal
as untimely on April 16, 1997.3

Subsequent to the BIA's dismissal of his appeal, Zayas
filed a series of habeas corpus petitions. Acting pro se,
Zayas filed two habeas petitions in the District Court for
the Eastern District of Pennsylvania.

_____

3. Since the appropriateness of the BIA's dismissal of Zayas's appeal as
untimely is not at issue here, we will simply note that the BIA's
administration of its timeliness rules seems, in spirit, not entirely in
harmony with the Supreme Court's opinion in Houston v. Lack, 487 U.S.
266 (1988), in which the Court ruled that a pro se prisoner's appeal to
the court of appeals of a district court order dismissing his habeas
corpus petition was timely filed, in conformity with Federal Rule of
Appellate Procedure 4(a)(1), when handed to the prison authorities in the
facility in which he was in custody within the time specified by Rule
4(a)(1): "The situation of prisoners seeking to appeal without the aid of
counsel is unique. Such prisoners cannot take the steps other litigants
can take to monitor the processing of their notices of appeal and to
ensure that the court clerk receives and stamps their notices of appeal
before the 30-day deadline. . . . [T]he pro se prisoner has no choice but
to entrust the forwarding of his notice of appeal to prison authorities
whom he cannot control or supervise and who may have every incentive
to delay. . . . Unskilled in law, unaided by counsel, and unable to leave
the prison, his control over the processing of his notice necessarily
ceases as soon as he hands it over to the only public officials to whom
he has access -- the prison authorities. . . ." 487 U.S. at 270-271; see
also Burns v. Morton, 134 F.3d 109, 112-13 (3rd Cir. 1998).

In the first petition, filed on June 15, 1998, Zayas argued
that his indefinite detention pending deportation was
unlawful. In a Report and Recommendation, Magistrate

Judge Rapoport found Zayas to be "in error regarding the applicable law," and recommended that the petition be "DENIED AND DISMISSED." Judge Reed approved and adopted the Report and Recommendation on October 6, 1998.

Zayas's second habeas petition was filed on June 30, 1999. Magistrate Judge Rapoport filed a Report and Recommendation in which he found that Zayas had raised essentially the same issues as he had in the first petition, and that Zayas's petition should therefore be dismissed. Again Judge Reed adopted the Report and Recommendation and dismissed the second habeas petition on August 11, 1999.

Meanwhile, on July 26, 1999, Zayas had filed with this court a petition styled "Motion for Review." In this submission, Zayas asked this court to review a decision by the INS District Director denying Zayas's release from detention.4 The INS subsequently moved to dismiss the "Motion for Review." On March 3, 2000, this court denied the motion to dismiss and ordered that the "Motion for Review" and an accompanying motion for appointment of counsel be transferred to the District Court for the Middle District of Pennsylvania (the district in which Zayas was in custody), instructing that the matter "be treated as a petition for habeas corpus under 28 U.S.C. S 2241."

The grievance that Zayas had pressed in his first two habeas petitions -- to wit, his claim that his indefinite detention was unlawful -- was resolved on June 30, 2000, when he was released from INS custody on bond pending his removal to Cuba. Upon his release, Zayas moved to dismiss the habeas petition that had its genesis as a "Motion for Review," and which was by that time pending in

─────────────────────────────────────

4. As the government points out in its brief on this appeal, the District Court was under the impression that the "Motion for Review" constituted an appeal by Zayas to this court from the dismissal of his second habeas petition. Rather, the "Motion for Review" initiated a separate proceeding. Brief for Appellee at 6 n.3.

the Middle District. The District Court granted Zayas's motion and dismissed the petition on July 12, 2000.

On July 27, 1999 -- one day after filing in this court the "Motion for Review" challenging his continued detention, but several months before the "Motion for Review" was transferred by this court to the Middle District-- Zayas filed in the Middle District a new habeas petition under S 2241. In this petition, Zayas did not raise the indefinite detention issue which he had sought to present in the two Eastern District habeas petitions and which, in a later context, was the subject of the "Motion for Review." Instead, he sought "judiciary review, based on a determination that he is eligible for relief from deportation under section 212(c)

of the Immigration and Nationality Act" -- a reprise of the issue Zayas had attempted to present in the appeal dismissed by the BIA as untimely. In his Report and Recommendation, Magistrate Judge Durkin concluded that the new S 2241 petition should be dismissed on two alternative grounds.

First, he found Zayas's petition to be a second or successive petition which can only be filed in a district court if the court of appeals has granted permission for such filing. In his Report and Recommendation, Magistrate Judge Durkin summarized the process as follows:

> [P]ursuant to 28 U.S.C. S 2244(b)(3)(A), prior to filing a second or successive petition, a petitioner must move in the appropriate court of appeals for an order authorizing the district court to consider the application. Pursuant to S 2244(b)(2), in order for the court of appeals to grant such an application, it must find that the claim presented in the second or successive petition relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable, or that the factual predicate for the claim could not have been discovered previously through the exercise of due diligence and that the facts underlying the claim, if proven and viewed in the light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable fact finder would

7

> have found the petitioner guilty of the underlying offense.[5]

Second, Magistrate Judge Durkin found that Zayas was raising a procedural due process claim, and was therefore required to exhaust administrative remedies as required by the INA, 8 U.S.C. SS 1105a, 1252(d), and that Zayas's failure to perfect his appeal before the BIA constituted a failure to exhaust administrative remedies. On April 25, 2001, Judge Caputo adopted Magistrate Judge Durkin's Report and Recommendation, but with certain modifications. First, Judge Caputo considered the applicability of the gatekeeping mechanism of S 2244(b) to habeas petitions filed pursuant to S 2241. Relying on decisions of the Seventh Circuit, Valona v. United States, 138 F.3d 693 (7th Cir. 1998), and the Ninth Circuit, Barapind v. Reno, 225 F.3d 1100 (9th Cir. 2000), Judge Caputo concluded that S 2241 petitions were not subject to S 2244(b)'s gatekeeping regime.

Having concluded that S 2244(b) was inapplicable, Judge Caputo noted that the petition "does raise an issue which could have been raised in his first petition." With matters in this posture, Judge Caputo concluded that "the petition should be considered in the context of the Supreme Court decision of McCleskey [v. Zant, 499 U.S. 467 (1991)] for

abusing the writ." Judge Caputo determined that Zayas was presenting in his Middle District petition an issue -- namely, "a contention that the restrictions of the AEDPA should not have been retroactively applied" -- that could have been raised in his first habeas petition in the Eastern District, that Zayas had "failed to show any cause, prejudice or a fundamental miscarriage of justice for failing to include that argument in his first petition," and hence that the Middle District petition had to be dismissed for abuse of the writ.

_____

5. Magistrate Judge Durkin also found Zayas's Middle District petition barred by operation of Rule 9(b) of the Rules Governing S 2254 Cases. However, the District Court did not address Rule 9(b), and neither Zayas nor the government has referred to the Rule in the briefs submitted to this court; further, we have not found that our disposition of this appeal requires reference to the Rule.

8

Judge Caputo also found that the Middle District petition raised procedural due process questions and was therefore subject to dismissal for failure to exhaust administrative remedies.

The dismissal of Zayas's Middle District petition has given rise to the current appeal.

II. STANDARD OF REVIEW

Until a decade ago, the legal principles comprising the doctrine of abuse of the writ were a somewhat amorphous melange of statutes and case law, and administration of the doctrine was primarily committed "to the sound discretion of the federal trial judges." Sanders v. United States, 373 U.S. 1, 18 (1963). In 1991 -- as we point out infra, in part III of this opinion -- the doctrine of abuse of the writ underwent a sea-change: in McCleskey v. Zant, 499 U.S. 467 (1991), the Supreme Court reformulated the doctrine, "replac[ing] the nebulous and discretionary'ends of justice' standard with the more concretely defined cause and prejudice standard borrowed from procedural default law," a standard that "is an objective one which 'clarifies the imprecise contours' of the test that the district courts are to apply." Macklin v. Singletary, 24 F.3d 1307, 1312 (1994). The McCleskey reformulation led the Eleventh Circuit, in Macklin, to reexamine at some length the appropriate standard of appellate review of district court decisions relating to claims of abuse of the writ. The Eleventh Circuit, in an opinion by Judge Carnes, concluded that: "In this post-McCleskey era, the abuse of the writ doctrine presents objective, threshold questions involving the application of law to facts. We review district court rulings on such issues not under an abuse of discretion standard, but de novo." 24 F.3d at 1313.

We agree with Judge Carnes's thoughtful analysis.

III. DISCUSSION

28 U.S.C. S 2241 -- the "primary federal habeas corpus statute,"6 Zadvydas v. Davis, 533 U.S. 678, 687 (2001) -- is the vehicle by which an alien who is in custody may seek

_____

6. See infra, note 8.

judicial review of INS actions that affect the alien's status. INS v. St. Cyr, 533 U.S. 289, 308, 314 (2001); Chmakov v. Blackman, 266 F.3d 210, 213 (3d Cir. 2001); Liang v. INS, 206 F.3d 308, 320-21 (3d Cir. 2000).

In Zayas's Middle District S 2241 petition, he sought to present the argument that, because his immigration case was already pending as of the passage of AEDPA, his eligibility for S 212(c) relief was not affected by AEDPA. Said Zayas: "[T]he retroactivity and the restrictions of the [AEDPA] is no longer permitted to proceedings before its enactment . . . ." [citing cases, including Sandoval v. Reno, 166 F.3d 225 (3d Cir. 1999)]. This argument is an elaboration of the argument Zayas attempted to present to the BIA in the pro se appeal rejected as untimely; however, the argument was not mentioned in either of the two Eastern District petitions for habeas corpus. That it went unmentioned in the second Eastern District petition is notable because the second petition was filed five months after this court's decision in Sandoval v. Reno . In Sandoval, we held that AEDPA S 440(d), which had the effect of amending S 212(c) to bar persons convicted of drug offenses from discretionary relief, was not applicable to cases pending on the date of the statute's enactment. 166 F.3d at 239-42; cf. St. Cyr, 533 U.S. at 314-26.

Although the government in this case has accepted the ruling of Sandoval with respect to the retroactivity issue, the merits of Zayas's argument concerning the availability of S 212(c) relief from his deportation order are not under consideration; at issue is Zayas's entitlement to make the argument in his Middle District petition for habeas corpus.

Since Zayas has previously filed two habeas petitions in the Eastern District that have not presented theS 212(c) issue, the government contends that the District Court was correct in dismissing the habeas petition filed in the Middle District. In the District Court, the government relied on (1) 28 U.S.C. S 2244(b), the AEDPA gatekeeping mechanism that requires one who seeks to file a "second or successive" petition in a district court under S 2254 to first obtain the permission of the court of appeals, and, (2) in the alternative, the pre-AEDPA "abuse of the writ" case law embodied in McCleskey v. Zant, 499 U.S. 467 (1991). In

this court, the government has refrained from contesting Judge Caputo's conclusion that the S 2244(b) gatekeeping regime does not govern habeas petitions filed underS 2241.7 But the government supports Judge Caputo's further conclusion -- challenged by Zayas -- that McCleskey's "abuse of the writ" jurisprudence is applicable to, and operates to bar, Zayas's petition.

To understand what Congress, in 1996, sought to do in enacting S 2244(b), one must start with McCleskey, decided five years before. In McCleskey, the Supreme Court comprehensively addressed the problem of "abuse of the writ" presented by sequential habeas filings. The Court undertook to analyze, and to integrate into a systematic whole, the then-existing habeas statutes and rules and the Court's own principal prior case discussions of abuse of the writ. The Court announced the following formulation:

> When a prisoner files a second or subsequent application, the government bears the burden of pleading abuse of the writ. The government satisfies this burden if, with clarity and particularity, it notes petitioner's prior writ history, identifies the claims that appear for the first time, and alleges that petitioner has abused the writ. The burden to disprove abuse then becomes petitioner's. To excuse his failure to raise the

_____

7. On argument before this court the following colloquy was had:

> Court: Are you saying that on the second question, if the statute doesn't literally apply, you're agreeing that we don't need to apply the gatekeeper analysis by being informed by it, but rather you agree that we can go straight to McCleskey?

> Government: Yes, and that's what we argued in the brief.

> Court: So you're not taking issue with the District Court on that?

> Government: No, we did not [garble] not before this court, your Honor.

In response to a further question, government counsel said:

> The statute only applies to [S] 2254 and [S] 2255, which was primarily what AEDPA was interested in. It wasn't really contemplating INS decisions.

> claim earlier, he must show cause for failing to raise it and prejudice therefrom as those concepts have been defined in our procedural default decisions. The petitioner's opportunity to meet the burden of cause and prejudice will not include an evidentiary hearing if the district court determines as a matter of law that petitioner cannot satisfy the standard. If petitioner

> cannot show cause, the failure to raise the claim in an earlier petition may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to entertain the claim.

499 U.S. at 494-95.

In 1996, in AEDPA, Congress, concerned that successive habeas petitions filed in federal district courts still seemed to frustrate finality in the criminal process, amended S 2244 so as to impose tighter constraints than McCleskey's on habeas petitioners invoking S 2254 to present collateral challenges to state criminal convictions. UnderS 2244(b) as amended, (1) "[a] claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed," S 2244(b)(1), and (2) a "second or successive habeas corpus application under section 2254" presenting a claim not asserted in a prior habeas petition is subject to dismissal by the district court, S 2244(b)(2), unless the proposed petition has been submitted to, and found acceptable by, the court of appeals, S 2244(b)(3). A court of appeals's permission to file is in turn dependent on the petitioner's making a prima facie showing that the petition is keyed to (1) a new rule of constitutional law announced, and stated to be retroactive, by the Supreme Court, S 2244(b)(2)(A), or (2) newly discovered facts which, "if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense," S 2254(b)(2)(B)(ii). Concurrently with amending S 2244(b) to affect petitioners challenging state convictions, Congress, in AEDPA, amended S 2255 to impose substantially identical constraints on "second or successive" habeas petitions challenging federal convictions.

12

With this history in mind, we now address Judge Caputo's rulings that (1) the gatekeeping regime of S 2244(b) is inapplicable to Zayas's Middle District S 2241 petition, but (2) Zayas's petition is, nonetheless, barred because its filing constitutes abuse of the writ within the rubric of McCleskey.

A. Is the gatekeeping regime of S 2244(b) applicable to habeas petitions filed under S 2241?

To determine whether the S 2244(b) gatekeeping regime is applicable to habeas petitions filed under S 2241, the proper point of departure is the statutory text, which has been excerpted supra. The pertinent provisions of S 2244(b) refer to "a second or successive habeas corpus application under section 2254." S 2244(b)(1) and S 2244(b)(2). The statutory text does not in terms govern petitions under S 2241.

The two circuit courts that have considered the issue

have concluded that the text is to be construed as written. In Valona v. United States, Judge Easterbrook, for the Seventh Circuit, put the matter this way:

> Section 2244, which establishes the prior-appellate-approval mechanism for second or successive collateral attacks, requires permission before "a second or successive habeas corpus application under section 2254" (S 2244(b)(1), (2)) may be commenced. We know from Felker v. Turpin, 518 U.S. 651 (1996), that the statutory cross-reference must be taken seriously. Section 2244 refers to S 2254 but not S 2241, and Felker holds that the prior-approval mechanism therefore does not apply to petitions under S 2241. Section 2255 P 8 requires appellate approval for second or successive petitions under S 2255 as well as S 2254 but does not add S 2241 to the list of covered sections.

138 F.3d 693, 694 (7th Cir. 1998). Similarly, in Barapind v. Reno, Judge Thomas, for the Ninth Circuit, wrote as follows:

> In large part, AEDPA codified the abuse of the writ doctrine and created a "gatekeeping" mechanism restricting the filing of second or successive habeas applications in district court.

13

> However, the gatekeeping provisions of AEDPA, as set forth in 28 U.S.C. S 2244, do not apply to all habeas petitions, nor are all multiple collateral attacks "second or successive." First, the prior-appellate-review mechanism set forth in S 2244(b) requires the permission of the court of appeals before "a second or successive habeas corpus application under section 2254" may be commenced. Because S 2244(b) makes no reference to habeas petitions filed under S 2241, but rather, applies only to petitions filed pursuant to 28 U.S.C. S 2254, the prior-appellate-review provisions of S 2244(b) do not apply to habeas petitions filed under S 2241.

225 F.3d 1100, 1111 (9th Cir. 2000) (footnote and citations omitted).

We agree, as did Judge Caputo, with the Seventh and Ninth Circuits. We therefore hold that Zayas's S 2241 petition was not subject to the gatekeeping regime of S 2244(b).8

---

8. The government's brief states that "the Second and Tenth Circuits have both taken the view that 28 U.S.C. S 2244 governs S 2241 petitions, thereby barring successive S 2241 petitions, while the Seventh and Ninth Circuits disagree that the second or successive habeas corpus language set forth in S 2244(b) applies to S 2241 petitions." The Second and Tenth Circuit cases cited by the government are Chambers v. United States, 106 F.3d 472 (2d Cir. 1997); Triestman v. United States, 124 F.3d 361

(2d Cir. 1997); and George v. Perrill, 62 F.3d 333 (10th Cir. 1995).

We think that Chambers, Triestman and George are not in conflict with Valona and Barapind, the cases quoted in the text of our opinion. Chambers dismissed a S 2241 petition that sought to relitigate a federal prisoner's jail-credit claim asserted, and decided adversely, in a prior S 2241 petition; the dismissal was predicated on S 2244(a), a finality provision which applies to any habeas application challenging "the detention of a person pursuant to a judgment of a court of the United States," and hence embraces, without textual limitation, habeas applications brought under S 2255 or under S 2241. See Chambers, 106 F.3d at 474-75. The Triestman discussion cited by the government likewise relates to S 2244(a). Triestman , 124 F.3d at 373 n.17. George is similar, but deals with S 2244(a) in its pre-AEDPA form. 62 F.3d at 334.

However, as pointed out supra, note 6, on argument before this court the government substantially acknowledged that S 2241 is not governed by the AEDPA gatekeeping regime.

14

B. Is Zayas's S 2241 habeas petition barred as an abuse of the writ?

Having determined that the gatekeeping regime of S 2244(b) is inapplicable to a "second or successive" S 2241 habeas petition, we turn now to the question whether, as Judge Caputo ruled, a "second or successive" S 2241 habeas petition must, nonetheless, be dismissed if its filing constitutes abuse of the writ.

Zayas argues that Judge Caputo's analysis was flawed. According to Zayas, "[t]he district court's analysis of this issue is cyclical because a second or successive petition and abuse of the writ are, in essence, identical doctrines. Thus, after the district court determines that Zayas' habeas petition is not a second or successive petition under AEDPA, there is no reason to apply the McCleskey abuse of the writ analysis as AEDPA codified this doctrine in 28 U.S.C. S 2244."

We think the argument mistakes the scope of the AEDPA habeas amendments. The gatekeeping mechanism created by Congress was not put in place for all habeas petitioners. The S 2244(b) structure was, as we have explained above, specifically addressed to second or successive petitions filed pursuant to S 2254, i.e., petitions filed by state prisoners collaterally challenging their convictions on federal constitutional grounds. As the Supreme Court noted in Felker v. Turpin, in which it was considering the extent to which the S 2244(b) gatekeeping regime affected its own authority to entertain original habeas applications under SS 2241 and 2254, "[t]he provisions of the Act pertinent to this case concern second or successive habeas corpus applications by state prisoners." 518 U.S. 651, 656 (1996). Similarly, AEDPA's amendment of S 2255 put a gatekeeping regime in place for federal prisoners filing second or successive S 2255 habeas petitions collaterally challenging federal convictions. Valona, 138 F.3d at 694. In enacting

AEDPA, Congress was focusing on the problem of repetitive habeas challenges to criminal convictions, state and federal. Congress did not undertake to address the dissimilar categories of habeas petitions filed under S 2241 -- which, as noted above, is the "primary federal habeas

corpus statute,"9 Zadvydas v. Davis, 533 U.S. at 687 -- embracing, for example, applications challenging the manner in which a valid federal sentence is carried out, Chambers, 106 F.3d at 475, or applications, like Zayas's, challenging INS rulings.

Nor is it the case that the AEDPA gatekeeping regime simply put in statutory form what McCleskey had already defined as abuse of the writ. "In large part, AEDPA codified the abuse of the writ doctrine," Barapind, 225 F.3d at 1111, but, for the categories of habeas petitions that it directly addressed, it went further. As the Court explained in Felker v. Turpin:

> The Act . . . codifies some of the pre-existing limits on successive petitions, and further restricts the availability of relief to habeas petitioners. . . .
>
> The new restrictions on successive petitions constitute a modified res judicata rule, a restraint on what is called in habeas corpus practice "abuse of the writ." In McCleskey v. Zant, 499 U.S. 467 (1991), we said that "the doctrine of abuse of the writ refers to a

---

9. The first sentence of subsection (a) of S 2241 states: "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." In Felker v. Turpin, the Supreme Court noted that "Section 14 [of the First Judiciary Act, i.e., the Judiciary Act of 1789] is the direct ancestor of 28 U.S.C. S 2241 . . . ." 518 U.S. 651, 659 n.1 (1996). Section 14 provided:

> That all the before-mentioned courts of the United States, shall have power to issue writs of scire facias, habeas corpus, and all other writs not specially provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the principles and usages of law. And that either of the justices of the supreme court, as well as judges of the district courts, shall have power to grant writs of habeas corpus for the purpose of an inquiry into the cause of commitment. -- Provided, That writs of habeas corpus shall in no case extend to prisoners in gaol, unless where they are in custody, under or by colour of the authority of the United States, or are committed for trial before some court of the same, or are necessary to be brought into court to testify.

Act of Sept. 24, 1789, ch. 20, S 14, 1 Stat. 81-82.

complex and evolving body of equitable principles
informed and controlled by historical usage, statutory
developments, and judicial decisions." Id. , at 489. The
added restrictions which the Act places on second
habeas petitions are well within the compass of this
evolutionary process . . . .

518 U.S. at 664.

In short, AEDPA dealt with habeas petitions under
S 2254 and S 2255 by building on McCleskey rather than
supplanting it. Moreover, the Supreme Court has made it
clear that, even with respect to abuse of the writ scenarios
not governed in terms by AEDPA, its provisions "certainly
inform [judicial] consideration." Calderon v. Thompson, 523
U.S. 538, 558 (1998) (quoting Felker, 518 U.S. at 663). See
also In re Dorsainvil, 119 F.3d 245, 251 (3rd Cir. 1997).
Accordingly, while agreeing with Judge Caputo that Zayas's
habeas petition -- a S 2241 petition not governed by AEDPA
-- "should be considered in the context of McCleskey," we
would add the caveat that application of McCleskey to
Zayas's petition should be expected to yield a resolution in
harmony with AEDPA.

Judge Caputo applied McCleskey to Zayas's petition as
follows (citations omitted):

> In this case, Petitioner filed two prior petitions for
> habeas corpus relief with the Eastern District of
> Pennsylvania arguing that his detention was unlawful
> under 8 U.S.C. S 1252(c). The district court determined
> that Petitioner's detention was not unlawful and denied
> Petitioner's request for relief on the merits. Petitioner
> now asks for habeas relief in a third petition stating
> that the restrictions of the AEDPA should not have
> been retroactively applied. He argues that he will be
> able to show that he satisfies the requirements under
> S 212(c) for eligibility if granted the opportunity.
> Respondent has provided evidence that Petitioner had
> originally included this argument in his appeal to the
> BIA and certainly had the opportunity to raise the
> issue in his first habeas petition. Petitioner has not
> provided any explanation as to his reasons for failing to
> raise such issue with the district court in his first

17

> habeas petition. Petitioner has failed to show any
> cause, prejudice or a fundamental miscarriage of
> justice for failing to include that argument in his first
> petition. Therefore, Petitioner's petition for writ of
> habeas corpus will be dismissed not as a second or
> successive petition but for abuse of the writ.

In his brief on appeal, Zayas argues as follows:

> Clearly it would have been preferable for Zayas to
> have raised both the indefinite detention and
> retroactive application of AEDPA's version of S 212(c) in

> his first habeas petition. However, he did not do so because at the time he filed his first habeas petition he was most concerned with his indefinite detention and ultimate release from incarceration. As a pro se litigant, he did not realize that the abuse of the writ doctrine or the prohibition against second or successive petitions even existed. His primary concern was his release from incarceration. Once that request was denied, he accepted that he would remain incarcerated and began to focus on the issues that would enable him to remain in the United States with his family.

The argument seeks to explain Zayas's failure to advance his S 212(c) claim earlier, but does not justify the failure. Zayas had tried, albeit without success, to present the issue to the BIA, so he was aware of the issue before he filed his first habeas petitioning the Eastern District. And Sandoval -- a case lending strong support to his S 212(c) claim -- had been decided before Zayas's second Eastern District petition. To be sure, Zayas is not a lawyer and hence not schooled in the niceties of abuse of the writ doctrine. Nonetheless, the fact that appellant was not represented by counsel when he filed his two Eastern District petitions does not constitute "cause" -- or demonstrate "prejudice" -- within the reach of McCleskey. Further, appellant has made no showing "that a fundamental miscarriage of justice would result from a failure to entertain [his] claim." McCleskey, 499 U.S. at 495. We think AEDPA -- insofar as it "informs" our consideration of Zayas's claim -- does not point to a different resolution.

18

Accordingly, we conclude that the District Court's order dismissing appellant Zayas's habeas petition was proper and should be affirmed.10

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

---

10. Because we conclude that the District Court correctly ruled that appellant's habeas petition was subject to dismissal for abuse of the writ, we have no occasion to address the District Court's alternate ruling that the petition was also subject to dismissal for failure on appellant's part to exhaust his administrative remedies through a timely appeal to the BIA.

19