

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-29-2005

# Barenboy v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4562

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Barenboy v. Atty Gen USA" (2005). *2005 Decisions.* Paper 32.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/32

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

BPS-57                                                                **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 05-4562
_____

ALEXANDER BARENBOY,
Appellant

v.

ATTORNEY GENERAL OF THE UNITED STATES;
SECRETARY OF DEPARTMENT OF HOMELAND SECURITY;
WARDEN, Hudson County Correctional Facility

_____

On Appeal From the United States District Court
For the District of New Jersey
(D.C. Civil No. 05-02956)
District Judge: Honorable Joel A. Pisano

_____

Submitted For Possible Summary Action
Under Third Circuit LAR 27.4 and I.O.P. 10.6
November 23, 2005

Before:   RENDELL, AMBRO and BECKER, <u>Circuit Judges</u>.

(Filed  December 29, 2005)
_____

OPINION OF THE COURT
_____

PER CURIAM

    Alexander Barenboy appeals from an order of the United States District Court for

the District of New Jersey, dismissing his petition for a writ of habeas corpus as second or

successive.  Barenboy has also filed a motion for release on bail pending appeal.  For the reasons that follow, we will affirm the District Court's judgment and will deny the motion for release.

Barenboy was born in the Moldavian Soviet Socialist Republic, which no longer exists, having become the independent Republic of Moldova in August 1991.  CIA World Factbook, http://www.cia.gov/cia/publications/factbook/geos/md.html.  Barenboy entered the United States as a refugee in 1992.  About ten years later, he was convicted of a drug crime and was placed in removal proceedings.  An Immigration Judge (IJ) denied Barenboy's application for asylum, withholding of removal and deferral of removal under the United Nations Convention Against Torture, and ordered him removed to Moldova.  On August 18, 2004, the Board of Immigration Appeals (BIA) affirmed.

In December 2004, the Moldovan Embassy informed the U.S. Immigration and Customs Enforcement (ICE) that Barenboy was not a citizen of Moldova, but that he could apply for citizenship, based on his birth in Moldavia.  The Consul indicated that he would only forward an application for citizenship upon written request from Barenboy himself.  ICE prepared a letter for Barenboy's signature, requesting the application.  Barenboy signed the letter, but after his signature added the words "sing [sic] under the protest."  The deportation officer believed that the Moldovan Embassy would not accept such a letter, and did not send it.  The deportation officer informed Barenboy of his obligation to cooperate in applying for travel documents.

In September 2004, Barenboy filed a petition for a writ of habeas corpus, arguing that there was no likelihood of his removal in the foreseeable future and that his detention was therefore improper under Zadvydas v. Davis, 533 U.S. 678, 701 (2001) (holding that presumptively reasonable period to detain an alien beyond the removal period is six months).  The District Court rejected his argument, finding that Barenboy had "caused the continued detention," and that under the Immigration and Nationality Act, the Government was authorized to extend the removal period where the "alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure . . . ."  District Court order, March 30, 2005 (quoting 8 U.S.C. § 1231(a)(1)(C)).[1]

On June 8, 2005, Barenboy filed a second habeas petition in the District Court.  He again argued that his removal in the foreseeable future was unlikely, but provided no substantiation for the assertion, aside from his attorney's statements.  The District Court issued an order to show cause why the petition should not be dismissed as a second or successive petition.  After receiving responses and holding a hearing, the District Court dismissed the petition with prejudice, finding that Barenboy's issues had been raised in his prior petition, and that he raised no new issues.  Barenboy timely appealed.

We exercise plenary review of the District Court's dismissal of the petition as

---

[1] The District Court noted that the petition was also premature, as it was filed only forty-one days after the removal order became final.

second or successive.  Zayas v. INS, 311 F.3d 247, 252 (3d Cir. 2002).  We find no legal error here, as "a successive petition, which raises grounds identical to those raised and rejected on the merits, need not be entertained." See e.g., Kuhlmann v. Wilson, 477 U.S. 436, 454 (1986) (successive petition should be granted only in rare cases).  Barenboy raised no new issues in his second petition; but in response to the District Court's order to show cause why the petition should not be dismissed, he argued that circumstances had changed; e.g., he had cooperated in submitting a citizenship application, and his presumptive removal period had expired.  We agree with the District Court that these circumstances were not legally significant.

First, in its order denying Barenboy's first habeas petition, the District Court indicated that Barenboy's removal period was being extended due to his failure to cooperate in obtaining necessary documents.  In the second proceeding, the District Court affirmed this finding and clarified that the removal period did not begin until Barenboy began to cooperate with ICE officials; i.e., in April 2005.  Thus, the second habeas petition, filed about six weeks thereafter, was still premature.  Second, we agree with the District Court that Barenboy had failed to produce any competent evidence on the question of whether he was unlikely to be removed in the foreseeable future.[2]

---

[2] Once the six-month period has passed, the burden is on the alien to "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future . . . ." Zadvydas v. Davis, 533 U.S. 678, 701 (U.S. 2001). Only then does the burden shift to the Government, which "must respond with evidence sufficient to rebut that showing." Id.

We note that the six-month presumptive period has recently passed, but that does not mean that Barenboy is automatically entitled to be released. "To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701. If Barenboy believes he is unlikely to be removed in the near future, he may request the Department of Homeland Security to review his situation, as outlined in the Government's response in opposition to his release on bail. See 8 C.F.R. § 241.13. Further, Barenboy may file a habeas petition in the future if he can show that his removal is not reasonably foreseeable.[3]

For the foregoing reasons, we will affirm the judgment of the District Court. The motion for release is denied as moot.

---

[3] Barenboy has attached to his Memorandum of Law Opposing Summary Action a letter dated October 21, 2005 from the Embassy of Moldova, indicating that it cannot make a final decision on his citizenship application until it receives a proper identification document, an original criminal history record translated to Moldovan or Russian, and a money order for 10 U.S. dollars. As the Embassy is still willing to consider his citizenship application, he cannot show at this time that he is unlikely to be removed in the reasonably foreseeable future.

5