**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2633
_____

ANGEL ARGUETA ANARIBA,
                                        Appellant
v.

DIRECTOR HUDSON COUNTY
CORRECTIONAL CENTER

_____


On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-19-cv-09135)
District Judge: Honorable John M. Vazquez


_____


Argued April 21, 2021

Before:  AMBRO, RESTREPO, *Circuit Judges*, and NOREIKA[*], *District Judge.*

(Opinion Filed: November 3, 2021)

_____

[*]  The Honorable Maryellen Noreika, United States District Judge for the District of Delaware, sitting by designation.

Elyssa N. Williams **[ARGUED]**
The Bronx Defenders
360 E. 161st Street
Bronx, NY 10451
    *Counsel for Appellant*


Victor M. Mercado-Santana **[ARGUED]**
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
    *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

RESTREPO, *Circuit Judge*.

Angel Argueta Anariba, a native and citizen of Honduras, has been detained in the custody of Immigration and Customs Enforcement ("ICE") since December 2014. Over the course of his now approximately 82-month ICE detention, Argueta has been transferred at least 15 times to 6 different facilities in 4 different states.

In March 2019, Argueta filed the underlying petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the United States District Court for the District of New Jersey seeking relief from continued detention. At the time of his

filing, Argueta was detained at the Hudson County Correctional Facility in Kearny, New Jersey. The District Court denied Argueta's petition without prejudice, reasoning that the statutory scheme under which Argueta was detained subjected him to a mandatory detention period and thus rendered him ineligible for the immediate release requested. Over six months later, in April 2020, Argueta – who in the interim had been transferred to a detention facility outside of New Jersey – filed a motion in the District Court to reopen his § 2241 petition. The District Court denied Argueta's motion in July 2020. Finding that Argueta's motion raised new claims, the District Court construed his filing as a new habeas petition over which it lacked jurisdiction to consider for reasons stemming from ICE's transfer of Argueta to a detention facility outside of its territorial jurisdiction. Argueta appeals. For the reasons set forth below, we will reverse the District Court's order and remand for further proceedings.

## I.

### A.

Argueta entered the United States in 1998, at the age of 20. Settling in Washington, D.C., Argueta became involved in his community, started a family, and was employed in construction and carpentry. In 2007, Argueta got into an altercation with a former employer over the late payment of wages. He was subsequently convicted of aggravated assault under D.C. Code § 22-404.01 and sentenced to 96 months' imprisonment. In December 2014, Argueta was released early

3

for good behavior, having served all but approximately two years of his sentence. He was transferred directly into ICE custody.

The Department of Homeland Security ("DHS") immediately thereafter initiated removal proceedings under 8 U.S.C. § 1182(a)(6)(A)(i) (removal due to being present without admission or parole) and 8 U.S.C. § 1182(a)(2)(A)(i)(I) (removal due to conviction of a crime involving moral turpitude). Argueta admitted inadmissibility under § 1182(a)(6)(A)(i) and applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). The Immigration Judge ("IJ") rejected Argueta's claims, in part on the ground that Argueta's conviction for aggravated assault "constituted an aggravated felony crime of violence as defined under 18 U.S.C. § 16(b)." J.A. 24, ¶ 34. The Board of Immigration Appeals ("BIA") affirmed.

In October 2015, Argueta filed a petition for review and a motion to stay removal in the Second Circuit. The Second Circuit remanded Argueta's case to the BIA following the Supreme Court's decision in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018) (holding that § 16(b) as incorporated into the Immigration and Nationality Act was unconstitutionally vague). The BIA reopened Argueta's removal proceedings and remanded the case to the IJ. In March 2019, the IJ denied Argueta's petition for relief. The BIA affirmed on August 23, 2019, and Argueta again petitioned the Second Circuit for review. It granted Argueta a stay of removal in June 2020; his

4

petition for review remains pending. *See Argueta Anariba v. Att'y Gen.* (No. 19-2862).

**B.**

In December 2015, approximately twelve months into his ICE custody, Argueta requested a bond hearing pursuant to *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015), *cert. granted, judgment vacated*, 138 S. Ct. 1260 (2018). The IJ determined that Argueta's detention fell under 8 U.S.C. § 1231 and thus he did not have jurisdiction to hold a bond hearing. Argueta subsequently filed a habeas petition in the Southern District of New York. Finding that Argueta's detention was instead pursuant to 8 U.S.C. § 1226, the District Court granted Argueta's petition and directed the IJ to hold a bond hearing. *See Argueta Anariba v. Shanahan*, 190 F. Supp. 3d 344, 345 (S.D.N.Y. 2016).

By October 2016, Argueta's bond hearing still had not occurred. The District Court again ordered the IJ to conduct a bond hearing, which he did but applied the incorrect legal standard. This resulted in the District Court remanding the case for clarification, and, in August 2017, approximately 20 months into Argueta's ICE detention, the IJ denied Argueta bond "based on a finding of dangerousness to the community and flight risk." J.A. 27, ¶ 47.

In March 2019, Argueta – well into his 51st month of ICE detention, and approximately 19 months following his August 2017 bond hearing – filed the underlying habeas

5

petition in the District of New Jersey. At the time of filing, Argueta was detained at the Hudson County Correctional Facility in Kearny, New Jersey. Argueta's petition centered on allegations that his continued detention without a bond hearing violated the Fifth Amendment's Due Process Clause. The sole relief that Argueta sought was his immediate release from detention.

On October 1, 2019, the District Court dismissed Argueta's petition without prejudice. Concluding that the statutory scheme under which Argueta was being held had switched from § 1226 to § 1231 on August 23, 2019 (*i.e.*, when the BIA affirmed the IJ's post-*Dimaya* denial of Argueta's petition, thus making his removal order administratively final), the District Court found that Argueta was subject to § 1231's mandatory 90-day detention period and thus ineligible for the relief he sought. In doing so, it signaled that Argueta could file a motion to reopen should there be a change in the statutory scheme governing his detention. Yet it also hinted that Argueta's claims would continue to fall short for at least the "presumptively reasonable" six-month detention period following the lapse of § 1231's 90-day window. J.A. 10 n.3 (citing *Zadvydas v. Davis*, 533 U.S. 678 (2001) and *Guerrero-Sanchez v. Warden York Cnty. Prison*, 905 F.3d 208 (3d Cir. 2018)). On the same day as the District Court's decision, the Government transferred Argueta to a facility outside of New Jersey.

**C.**

In April 2020, Argueta – then detained at an ICE facility in Louisiana – filed a motion to reopen the habeas proceedings in the District of New Jersey.[1] Pointing to the District Court's decision as "expressly permitt[ing] [him] to seek reopening if his detention continued" beyond both § 1231's 90-day period and the "presumptively reasonable" six-month period, Argueta claimed that reopening was "required" at this point to address the alleged constitutional impermissibility of his continued detention. Pet'r's Mot. to Reopen Pet. for a Writ of Habeas Corpus, ECF No. 17 ("Mot. to Reopen") 2-3 (internal quotations omitted). He further argued that the COVID-19 outbreak, coupled with his medical conditions, amplified the urgency and necessity of his immediate release. While the motion was pending, the Second Circuit granted a stay of removal; Argueta informed the District Court accordingly.

The Government opposed Argueta's motion. According to the Government, the motion raised two new habeas claims that were not otherwise included in his original petition: "1) that his conditions of confinement during the COVID-19 pandemic violate his constitutional rights and

---

[1] Argueta's motion to reopen, as well as related docket entries (including the Government's opposition brief), do not appear in the record on appeal. However, we may take judicial notice of the District Court's docket. *See Orabi v. Att'y Gen.*, 738 F.3d 535, 537 n.1 (3d Cir. 2014) ("We may take judicial notice of the contents of another [c]ourt's docket.").

7

warrant[] immediate release; and 2) that his detention under § 1231(a)(6) has exceeded six months under *Zadvydas* and *Guerrero-Sanchez* and warrants immediate release." Opp. to Pet'r's Mot. to Reopen 1, 11. The Government urged the District Court to find that the immediate custodian rule pursuant to *Rumsfeld v. Padilla*, 542 U.S. 426 (2014), foreclosed the District Court's ability to exercise jurisdiction over these new claims, as the Government no longer was detaining Argueta in New Jersey. Relatedly, it reasoned that any change in the statutory scheme governing Argueta's detention occurred not only after the District Court closed the matter but also after he was removed from New Jersey, and any suggestion that the District Court "retained jurisdiction as if this matter had never been adjudicated to its conclusion" was baseless. *Id.* at 11. Furthermore, if the District Court were to find it had jurisdiction, the Government stated that it should transfer the case to the Western District of Louisiana, which the Government deemed to be the "appropriate venue" given Argueta's then-detention at the Catahoula Correctional Center in Harrisonburg, Louisiana. *Id.* at 16.

On July 13, 2020, the District Court denied Argueta's motion to reopen. Agreeing with the Government that his "case was closed when the matter became ripe for reconsideration," the District Court viewed Argueta's discussion pursuant to *Zadvydas* as a new claim over which it lacked jurisdiction. J.A. 3. Additionally, it construed Argueta's COVID-19 argument as a "new filing," which "should be adjudicated in the jurisdiction where he is currently housed" –

*i.e.*, the Western District of Louisiana. *Id.* (citing *Padilla*, 542 U.S. at 442-43 ("[F]or core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement.")). Argueta timely appeals.

**D.**

As a final matter before considering the merits of Argueta's appeal, we look to the nature and circumstances of his ICE detention. At the time of briefing, Argueta claimed that the Government had transferred him at least 14 times to 5 different facilities in 4 different states. At oral argument, Argueta's counsel indicated that, since the last filing in this case, ICE had once again transferred Argueta – this time from Catahoula Correctional Center in Harrisonburg, Louisiana to a facility in Pine Prairie, Louisiana. Over the course of his ICE detention, amounting to approximately 82 months, this totals to the Government having transferred Argueta at least 15 times to 6 different facilities in 4 different states. As far as we are aware, Argueta remains detained in Louisiana within the territorial jurisdiction of the Western District of Louisiana. And, since being transferred outside of New Jersey, Argueta has not filed for habeas relief in any other jurisdiction.

## II.

The District Court had jurisdiction over Argueta's habeas petition pursuant to 28 U.S.C. § 2241. Whether it retains jurisdiction to entertain Argueta's motion to reopen is at issue on appeal. Our jurisdiction to consider Argueta's appeal of the District Court's denial of his motion to reopen arises under 28 U.S.C. § 1291.

Focusing on the substance of the filing over its form or label, we construe Argueta's "motion to reopen" as we would a Rule 60(b)(6) motion.[2] *Cf. Ahmed v. Dragovich*, 297 F.3d 201, 208 (3d Cir. 2002) ("[W]e are free to recharacterize the motion to amend to match the substance of the relief requested."); *Ortho Pharm. Corp. v. Amgen, Inc.*, 887 F.2d 460, 463 (3d Cir. 1989) (in deciding how to treat a motion, our inquiry stems "from its substance and not from its form"); *Turner v. Evers*, 726 F.2d 112, 114 (3d Cir. 1984) (analyzing a motion based on its "function . . . not its caption"); 12 James Wm. Moore et al., *Moore's Federal Practice* § 60.64 (3d ed.).

We typically review a district court's dismissal of a motion to reopen under Rule 60(b)(6) for abuse of discretion. *See Pridgen v. Shannon*, 380 F.3d 721, 725 (3d Cir. 2004). However, we review questions of law *de novo*. *Id.*; *cf. Wiest v.*

---

[2] While both parties recommend that we consider Argueta's motion to reopen his § 2241 petition as we would a Rule 60(b) motion, neither points us to a specific subsection of Rule 60(b). However, the only plausible basis for Argueta's motion is subsection (b)(6), so we will view it as such.

*Lynch*, 710 F.3d 121, 128 (3d Cir. 2013) ("[W]hen a district court predicates its denial of reconsideration on an issue of law, our review is plenary[.]"). Our *de novo* review extends to "question[s] regarding the legal status of the 60(b) motion." *Pridgen*, 380 F.3d at 725; *see also Williams v. Chatman*, 510 F.3d 1290, 1293 (11th Cir. 2007) (in considering a Rule 60(b) motion, "[w]e review *de novo* questions concerning jurisdiction").

## III.

We must determine whether it was proper for the District Court to deny Argueta's 60(b)(6) motion. From a high altitude, our review centers on the effect that the Government's transfer of Argueta out of New Jersey had on the District Court's jurisdiction over his case. But, panning in, our inquiry settles on two related, yet independent, threshold issues that concern the legal status of Argueta's motion: First, did the District Court err in finding that his motion raised new claims such that it amounted to a new habeas petition? Second, to the extent that Argueta's motion is *not* a new habeas petition in disguise, did the Government's transfer of Argueta out of New Jersey following the District Court's denial of his habeas petition without prejudice divest it of jurisdiction? Answering the former in the affirmative and the latter in the negative, we hold that the District Court was mistaken in its conclusion that it lacked jurisdiction. Argueta did not raise new claims in his motion to reopen, and it therefore should not be construed as anything but a true Rule 60(b)(6) motion. Additionally, Argueta's transfer out of New Jersey did not strip the District

11

Court of jurisdiction.  Based on the following analysis, we will reverse the District Court's ruling and remand for further proceedings.

## A.

We first look to whether the District Court erred in finding that Argueta's motion, to the extent that it includes new claims, amounted to a new habeas petition.  The District Court suggested that Argueta raised two new claims in his motion: First, his "right to a bond hearing under *Zadvydas*," and, second, his "COVID-19-related concerns."  J.A. 3.  As to the *Zadvydas* argument, it adopted the Government's position that since the underlying change in Argueta's statutory detention occurred after it denied his petition without prejudice, it should be viewed as a new claim.  J.A. 3-4 (noting that "the case was closed when the matter became ripe for re-consideration") (citing Opp. to Pet'r's Mot. to Reopen 15-16).  As to Argueta's COVID-19 argument, the District Court simply construed it as a "new filing," without providing further reasoning.[3]  J.A. 3.  Because these reasons alone do not warrant the conversion of an ICE detainee's Rule 60(b)(6) motion into a new habeas petition, we hold that the District Court's reading of Argueta's motion as a new habeas petition was in error.

### 1.

---

[3]  While not a part of the District Court's reasoning, we note that Argueta filed his § 2241 petition almost an entire year prior to the onset of the COVID-19 pandemic.

As an initial matter, we note that the Court has yet to consider the circumstances in which an ICE detainee's Rule 60(b)(6) motion, filed following a district court's denial of a § 2241 petition seeking relief from continued detention, may amount to a new habeas filing. It is widely recognized that petitioners seeking habeas relief under either 28 U.S.C. § 2254 or § 2255 may seek relief from final judgment pursuant to Rule 60(b), without the Rule 60(b) motion necessarily being construed as a new, or successive, habeas petition. *See Gonzalez v. Crosby*, 545 U.S. 524, 534 (2005) (noting, in its analysis of Rule 60(b) in the context of a habeas case arising under § 2254, that "Rule 60(b) has an unquestionably valid role to play in habeas cases"); *see also Wilson v. Sec'y Pa. Dep't of Corr.*, 782 F.3d 110, 115 (3d Cir. 2015) (addressing Rule 60(b) in the context of a habeas case arising under § 2254); *United States v. Arrington*, 763 F.3d 17, 22 (D.C. Cir. 2014) (indicating that at least six Courts of Appeals, including the D.C. Circuit, have recognized *Gonzalez* in the context of cases arising under § 2255). Less well-established is the relationship between a Rule 60(b) motion and § 2241, particularly in the context of an ICE detainee seeking habeas relief from continued detention pursuant to § 2241. Yet, for the purposes of this appeal, our task is to define exactly that. Given the novelty of this narrow issue, and the lack of precedent definitively on point, we begin our inquiry by looking to how we have considered Rule 60(b) motions in the broader habeas context.

13

The Supreme Court in *Gonzalez* held that a Rule 60(b) motion in the § 2254 context should be construed as a new habeas petition when it "seeks vindication" of a "claim," *i.e.*, when the Rule 60(b) motion advances "an asserted federal basis for relief from a state court's judgment of conviction." 545 U.S. at 530-31. This may occur, for example, when the Rule 60(b) motion "seeks to add a new ground for relief" or "attacks the federal court's previous resolution of a claim on the merits."[4] *Id.* at 532 (emphasis omitted). The underlying

---

[4] As to the latter, the *Gonzalez* Court noted that "[t]he term 'on the merits' has multiple usages." *Gonzalez*, 545 U.S. at 532 n.4. But here, it refers to "a determination that there exist or do not exist grounds entitling a petitioner to habeas corpus relief under 28 U.S.C. §§ 2254(a) and (d)." *Id.* So, "[w]hen a movant asserts one of those grounds (or asserts that a previous ruling regarding one of those grounds was in error) he is making a habeas corpus claim. He is not doing so when he merely asserts that a previous ruling which precluded a merits determination was in error – for example, a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar." *Id.*

We have previously applied this principle in the § 2253(c) context. In *Bracey*, the Court held that § 2253(c)'s certificate of appealability requirement extended to a § 2254 petitioner's appeal of a denial of a Rule 60(b) motion, in which the petitioner had requested the district court to reconsider its dismissal of his habeas petition on procedural grounds. *Bracey v. Superintendent Rockview SCI*, 986 F.3d 274, 281-83 (3d Cir. 2021). In reaching this conclusion, we recognized that "*Gonzalez* used 'the merits' to distinguish a 'true Rule 60(b)

14

rationale being that allowing such a "claim" to proceed by way of Rule 60(b) would create inconsistencies with the gatekeeping mechanism of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which, as relevant here, imposes limitations on a § 2254 petitioner's ability to bring "second or successive" habeas petitions. *Id.* at 529-31; *see* 28 U.S.C. § 2244(b). What this means is that *Gonzalez* restricts a petitioner from filing a "second or successive" habeas petition disguised as Rule 60(b) motion in order to bypass AEDPA's gatekeeping mechanism. *See Bracey v. Superintendent Rockview SCI*, 986 F.3d 274, 282 (3d Cir. 2021). On the flip side, "[w]hen no 'claim' is presented, there is no basis for contending that the Rule 60(b) motion should be treated like a habeas corpus application," because there is little risk that a petitioner is harnessing Rule 60(b) to circumvent AEDPA's gatekeeping mechanism. *Gonzalez*, 545 U.S. at 531, 533.

In contrast, a habeas petition pursuant to § 2241 – like Argueta's – is not subject to AEDPA's gatekeeping mechanism. *Zayas v. I.N.S.*, 311 F.3d 247, 255 (3d Cir. 2002) ("The statutory text [of 28 U.S.C. § 2244(b)] does not in terms govern petitions under § 2241."); *see also Holland v. Warden Canaan USP*, 998 F.3d 70, 74-75 (3d Cir. 2021) ("[Section] 2241 has no gatekeeping provision[.]"); *Queen v. Miner*, 530

motion' attacking a procedural defect from a disguised successive habeas petition attacking the substantive resolution of a habeas claim[.]" *Id.* at 282 (citing *Gonzalez*, 545 U.S. at 531-32). The same reasoning applies here.

F.3d 253, 254-55 (3d Cir. 2008) (per curiam) (same). However, petitions under § 2241 are still subject to the predecessor of AEDPA's gatekeeping mechanism: the abuse of the writ doctrine. *Zayas*, 311 F.3d at 257. The abuse of the writ doctrine, which "refers to a complex and evolving body of equitable principles informed and controlled by historical usage, statutory developments, and judicial decisions," *McCleskey v. Zant*, 499 U.S. 467, 489 (1991), generally prohibits a petitioner under § 2241 from "rais[ing] new claims that could have been resolved in a previous action," *Queen*, 530 F.3d at 255; *see also McCleskey*, 499 U.S. at 496-98 (adopting a "cause and prejudice standard" under which to analyze whether a petition is barred under the abuse the writ doctrine). When considering the abuse of the writ doctrine in the context of a § 2241 proceeding, we do not consider it in a vacuum entirely distinct from the principles underlying AEDPA. *Zayas*, 311 F.3d at 257 ("[E]ven with respect to abuse of the writ scenarios not governed in terms by AEDPA, its provisions 'certainly inform [judicial] consideration.'") (quoting *Calderon v. Thompson*, 523 U.S. 538, 558 (1998)). Rather, our application of the doctrine "should be expected to yield a resolution in harmony with AEDPA." *Id.*

With this expectation of harmony in mind, it follows that the underlying principle in *Gonzalez* – that a § 2254 petitioner cannot use Rule 60(b) to sidestep an application of AEDPA's gatekeeping mechanism – likewise resonates in the § 2241 context, at least to the extent that a § 2241 petitioner cannot use Rule 60(b)(6) to sidestep an application of the abuse

16

of the writ doctrine. For our limited purpose here, it need not matter that AEDPA imposes "sharply narrow[er]" limitations on "second or successive" petitions. 2 Randy Hertz & James S. Liebman, Federal Habeas Corpus Practice and Procedure § 28.3 (7th ed.). Instead, what is relevant is that both AEDPA's gatekeeping mechanism and the abuse of the writ doctrine place limitations, whatever they may be, on a petitioner's filing of a successive habeas petition. And a Rule 60(b)(6) motion, if it in substance constitutes a successive habeas petition, could conflict with these limitations.

Therefore, turning back to *Gonzalez* for guidance, we look to its holding to clarify when a Rule 60(b)(6) motion amounts to a new, or successive, habeas petition in the context of an ICE detainee seeking relief from continued detention pursuant to § 2241. We hold that an ICE detainee's Rule 60(b)(6) motion amounts to a new habeas petition if it "seeks vindication" of a "claim," *i.e.*, when the Rule 60(b)(6) motion advances "an asserted federal basis for relief" from the continued detention. *Gonzalez*, 545 U.S. at 530-31. Likewise, we adopt *Gonzalez*'s reasoning that such a "claim" may occur when the Rule 60(b)(6) motion "seeks to add a new ground for relief" or "attacks the federal court's previous resolution of a claim on the merits." *Id.* (emphasis omitted). And if an ICE detainee's Rule 60(b)(6) motion does not advance a "claim," then "there is no basis for contending that [it] should be treated like a habeas corpus application." *Id.*

17

**2.**

The District Court, without citing to any authority, found that Argueta's motion raised two new claims: 1) his "right to a bond hearing under *Zadvydas*," and, 2) his "COVID-19-related concerns." J.A. 3. Thus, for the purposes of its jurisdictional inquiry, it treated Argueta's motion as it would a new habeas petition. This was in error.

Applying our adoption of *Gonzalez* to the § 2241 context, Argueta's Rule 60(b) motion cannot be construed as a new habeas petition because it does not "seek[] vindication" of a "claim." *Cf. Gonzalez*, 545 U.S. at 530-31. First, as to whether Argueta's motion includes new grounds for relief, the answer is no. Argueta's COVID-19 discussion is not a new ground for relief, it is merely a recital of reasons for why the District Court should find that there are "extraordinary circumstances" that favor it reopening his § 2241 petition. Mot. to Reopen 8-13 ("[E]xtraordinary circumstances exist requiring release because Mr. Argueta's asthma, emphysema, PTSD and mental health concerns put him at heightened vulnerability of severe illness or death if infected by COVID-19 while in immigration detention."); Reply Br. 5 ("Petitioner offered the information about his medical conditions to support the argument that his prolonged detention was unconstitutional and immediate release continued to be the proper remedy."). This is the exact type of "extraordinary circumstance" that petitioners are free to raise on a Rule 60(b)(6) motion. *See Bracey*, 986 F.3d at 284 ("A court may grant equitable relief under Rule 60(b)(6) 'in extraordinary circumstances where,

18

without such relief, an extreme and unexpected hardship would occur.'") (quoting *Cox v. Horn*, 757 F.3d 113, 120 (3d Cir. 2014)).

Nevertheless, the Government urges us to consider Argueta's COVID-19 discussion as a new claim because it was not raised in his § 2241 petition. Appellant's Br. 12 ("[T]he claims Appellant seeks to raise here were not raised in his habeas petition because they were not ripe at that time. And Appellant's COVID-related claims arose in March 2020 when the COVID-19 pandemic began in the United States."). But the very nature of a Rule 60(b)(6) motion requires a consideration of "other reason[s] that justif[y] relief," which may include those that were not "raised" in the underlying petition because they do not come to light until after the final judgment. Fed. R. Civ. P. 60(b)(6). Viewing a novel discussion or argument made in a Rule 60(b)(6) motion as a new claim would essentially read Rule 60(b)(6) out of existence. Therefore, this reasoning alone does not merit a conclusion that Argueta's COVID-19 discussion constitutes a new claim.

Likewise, Argueta's *Zadvydas* argument is not a new ground for relief. The District Court is correct that the underlying change in Argueta's statutory detention occurred after it denied his petition without prejudice such that this argument was not "ripe" at the time it reviewed the § 2241 petition. However, Argueta offers this discussion simply as another "reason" in support of his effort to obtain relief from final judgment under Rule 60(b)(6). Mot. to Reopen 3, 5-7.

Again, this argument alone does not support a conclusion that a Rule 60(b)(6) motion amounts to a new claim.

Finally, Argueta's motion does not "attack[] the federal court's previous resolution of a claim on the merits." *Cf. Gonzalez*, 545 U.S. at 530-32 (emphasis omitted). The District Court denied Argueta's petition, in sum, on a threshold determination that he was ineligible for immediate release due to the change in the statutory scheme governing his detention. *See, e.g.*, J.A. 2 ("[T]he Court determined that Petitioner's period of detention was not unconstitutional under *Zadvydas*[.]"). It did not address the merits of why the circumstances of his continued detention violated his right to due process under the Fifth Amendment and warranted immediate release. Argueta's motion does not challenge the correctness of the District Court's determination. Rather, as relevant to this point, Argueta merely asserts that the subsequent change in the statutory scheme governing his detention justifies the District Court reopening his § 2241 petition and reaching more than a threshold determination as to reopening his habeas proceeding. Mot. to Reopen 3 ("Mr. Argueta moves to reopen the § 2241 habeas corpus petition as there is no constitutionally permissible basis for his continued detention."); *cf. Gonzalez*, 545 U.S. at 532 n.4 (A Rule 60(b) movant "is not [making a habeas claim] when he merely asserts that a previous ruling which precluded a merits determination was in error – for example, a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar.").

20

Given that Argueta's motion does not advance a "claim," "there is no basis for contending that [it] should be treated like a habeas corpus application." *Id.* at 531, 533. We do not clip the wings of Argueta's motion: we view it as proper Rule 60(b) motion, that does not raise new habeas claims. The District Court erred in finding otherwise. To be sure, this is not to say that Argueta's COVID-19 or *Zadvydas* arguments amount to the "extraordinary circumstances" that warrant a court to grant a Rule 60(b)(6) motion on the merits – we make no determination of that here. Instead, we narrowly hold that the arguments Argueta raises in his motion fit within the parameters of what constitutes a proper Rule 60(b)(6) motion, and it should be treated as such.

**B.**

We are next tasked with determining whether the District Court erred in finding that it lacked jurisdiction over Argueta's motion. Viewing his motion as a new habeas petition, the District Court concluded that it lacked jurisdiction to entertain the filing due to Argueta's transfer out of its territorial jurisdiction. It did not consider its jurisdiction to the extent that his motion did not amount to a new habeas petition. But, as addressed in the previous section, Argueta's motion constitutes a proper Rule 60(b)(6) motion, and does not amount to a new habeas petition. Therefore, the District Court should have considered the effect of an ICE detainee's transfer on a district court's jurisdiction at the Rule 60(b) stage – *not* the § 2241 filing stage. This error is fatal to the District Court's analysis. Based on the following, we hold that the District

21

Court retained jurisdiction over Argueta's case despite his transfer outside of its territorial jurisdiction.

**1.**

We recognize "[w]henever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement." *Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004); *Bruce v. Warden Lewisburg USP*, 868 F.3d 170, 178 (3d Cir. 2017); *see also* 28 U.S.C. §§ 2242 and 2243. This is aptly called the "immediate custodian rule." *Padilla*, 542 U.S. at 435. The logic of this rule rests in an understanding that "the warden . . . has day-to-day control over the prisoner and who can produce the actual body." *Yi v. Maugans*, 24 F.3d 500, 507 (3d Cir. 1994); *see Wales v. Whitney*, 114 U.S. 564, 574 (1885) (recognizing that governing body of habeas law "contemplate[s] a proceeding against some person who has the *immediate custody* of the party detained, with the power to produce the body of such party before the court or judge") (emphasis added). "This rule . . . serves the important purpose of preventing forum shopping by habeas petitioners." *Padilla*, 542 U.S. at 447. As the *Padilla* Court acknowledged:

> Without [this rule], a prisoner could name a high-level supervisory official as respondent and then sue that person wherever he is amenable to long-arm

22

jurisdiction. The result would be rampant forum shopping, district courts with overlapping jurisdiction, and the very inconvenience, expense, and embarrassment Congress sought to avoid when it added the jurisdictional limitation 137 years ago.

*Id.*

For cases arising under § 2241, a district court evaluates its jurisdiction at least in part based on a proper application of the immediate custodian rule. *United States v. Poole*, 531 F.3d 263, 273-74 (4th Cir. 2008). "[S]election of the proper respondent is critical to the question of jurisdiction because, '[i]n habeas challenges to present physical confinement, . . . the district of confinement is *synonymous* with the district court that has territorial jurisdiction over the proper respondent.'" *Id.* at 273 (citing *Padilla*, 542 U.S. at 444). So if a § 2241 petitioner does not adhere to the immediate custodian rule, then the district court lacks jurisdiction to entertain the petition.

But what happens to a district court's jurisdiction when the § 2241 petitioner, who has adhered to the immediate custodian rule, is transferred out of the court's territorial jurisdiction *after* the proper filing of the petition? The Supreme Court addressed this question in *Padilla*: "[w]hen the Government moves a habeas petitioner after she properly files

23

a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release."  542 U.S. at 441 (reaffirming its holding in *Ex parte Endo*, 323 U.S. 283, 306-07 (1944)).  The Supreme Court in *Endo* articulated that

> [the] objective [of habeas relief] may be in no way impaired or defeated by the removal of the prisoner from the territorial jurisdiction of the District Court. That end may be served and the decree of the court made effective if a respondent who has custody of the prisoner is within reach of the court's process even though the prisoner has been removed from the district since the suit was begun.

*Endo*, 323 U.S. at 307.[5]

---

[5]  The applicability of *Endo* in the Rule 60(b) context also conforms with how a court evaluates petitioner transfers in the Rule 23(a) context.  *See Barden v. Keohane*, 921 F.2d 476, 477 n.1 (3d Cir. 1990) (recognizing that the court retains jurisdiction over a habeas petition despite the petitioner's transfer when there was no application for transfer pursuant to Rule 23(a)); *Meck v. Commanding Officer, Valley Forge Gen.*

Our precedent likewise reflects an adherence to the general rule articulated in *Endo*, that the government's post-filing transfer of a § 2241 petitioner out of the court's territorial jurisdiction does not strip the court of jurisdiction over the petition. In *Ex parte Catanzaro*, 138 F.2d 100 (3d Cir. 1943) *cert. denied* 321 U.S. 793 (1944) – which was decided prior to *Endo* – the Court noted its skepticism at the belief that "passing about of the body of a prisoner from one custodian to another after a writ of habeas corpus has been applied for can defeat the jurisdiction of the Court to grant or refuse the writ on the merits of the application." 138 F.2d at 101. The Court made clear that "where one has become subject to the jurisdiction of a court, *the jurisdiction continues in all proceedings arising out of the litigation* such as appeals and writs of error." *Id.* (emphasis added). In the decades since *Catanzaro* and *Endo*, we have continuously applied this rule when reviewing similar jurisdictional inquiries. *See, e.g.*, *McGee v. Martinez*, 490 F. App'x 505, 506 (3d Cir. 2012) (noting that the post-filing transfer of a § 2241 petitioner from a facility in Pennsylvania

---

*Hosp.*, 452 F.2d 758, 761 n.11 (3d Cir. 1971) (recognizing that "it is not clear that a suitable respondent with custody remained in this jurisdiction" but noting that "Rule 23 of the Federal Rules of Appellate Procedure makes it clear that the transfer of petitioner to another's custody may not be a means of depriving the court of jurisdiction once it has attached"); *see also Griffin v. Ebbert*, 751 F.3d 288, 290 (5th Cir. 2014) ("Jurisdiction attached on that initial filing for habeas corpus relief, and it was not destroyed by the transfer of petitioner and accompanying custodial change.") (internal citation omitted).

25

to one in Miami did not divest the district court of jurisdiction over the habeas petition, nor did it divest the Court of jurisdiction over the appeal); *Brown v. Yates*, 154 F. App'x 319, 320 (3d Cir. 2005) (holding that our Court retained jurisdiction over petitioner's appeal of the district court's dismissal of his habeas petition despite his post-filing transfer from a facility in Pennsylvania to one in Kentucky); *cf. Caballero v. United States*, 145 F. Supp. 2d 550, 558 (D.N.J. 2001) (finding that the post-filing transfer of a petitioner out of state while his habeas petition was pending had "no effect" on the court's jurisdiction).

**2.**

When Argueta filed the § 2241 petition in March 2019, he was detained in New Jersey, at the Hudson County Correctional Facility in Kearny. He named Ronald P. Edwards, in his official capacity as Director of the Hudson County Correctional Facility, as a respondent, and he filed the petition in his district of confinement, the District of New Jersey. There is no dispute, be it about an application of the immediate custodian rule or otherwise, that the District Court acquired jurisdiction over Argueta's § 2241 petition.

The Government transferred Argueta out of New Jersey on October 1, 2019 – the same day that the District Court denied his petition without prejudice. Applying the Supreme Court's holding in *Endo* that "when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction,"

26

our analysis is straightforward: the District Court retained jurisdiction following Argueta's transfer out of New Jersey because it already had acquired jurisdiction over Argueta's properly filed habeas petition that named his then-immediate custodian, the director of the Hudson County Correctional Facility. *Padilla*, 542 U.S. at 441 (reaffirming *Endo*'s "important but limited" holding concerning the post-filing transfer of a § 2241 petitioner); *Endo*, 323 U.S. at 307. This conclusion conforms with our long-held belief that "passing about of the body of a prisoner from one custodian to another after a writ of habeas corpus has been applied" does not defeat the jurisdiction of the Court to consider the merits of the habeas petition. *Catanzaro*, 138 F.2d at 101.

While our analysis need not go further, we address the Government's arguments in turn.

The Government's position rests heavily on the same faulty reasoning of the District Court, namely that Argueta's motion constitutes a new habeas petition. Accordingly, the Government suggests that *Endo* is distinguishable because, unlike the petitioner in *Endo* who "was transferred while her direct appeal was pending in the court of appeals," Argueta "had no open habeas petition pending in New Jersey at the time his new claims arose." Appellant's Br. 13. It may be true that *if* Argueta's motion amounted to a new habeas petition, then the Court would lack jurisdiction pursuant to an application of the immediate custodian rule at the time that these new claims arose (*i.e.*, in April 2020). *See, e.g.*, *Padilla*, 542 U.S. at 441 (noting the inapplicability of *Endo* where the petitioner was

27

transferred out of the territorial jurisdiction of the court prior to the filing of the habeas petition).  But that is not the question at issue here.[6]

Similarly, the Government contends that "[i]f the Court adopts [Argueta's] position that a closed habeas petition should be reopened to raise new claims that arose in another jurisdiction under another custodian, there would be an opportunity for forum shopping."  Appellant's Br. 14.  The Government suggests that this gamesmanship not only undermines the immediate custodian rule, but it also would allow a petitioner the "choice to pursue a habeas claim in their current jurisdiction or pursue those claims in another jurisdiction."  *Id.* at 15.  Again, this forum-shopping argument is relevant to the scope and purpose of the immediate custodian rule, and may have a role to play in Argueta's case if his motion in fact amounted to a new habeas petition.  *See, e.g.*, *Padilla*, 542 U.S. at 447 (noting that the immediate custodian rule prevents "a prisoner . . . nam[ing] a high-level supervisory official as respondent and then su[ing] that person wherever he is amenable to long-arm jurisdiction.  The result . . . be[ing] rampant forum shopping, district courts with overlapping

---

6  Applying *Padilla*, the District Court construed Argueta's motion as a "new filing" that failed to satisfy the immediate custodian rule because he was not detained in New Jersey at the time of its filing.  J.A. 3 ("[F]or core habeas petitions challenging present physical confinement, jurisdiction lies in only one district:  the district of confinement.") (quoting *Padilla*, 542 U.S. at 442-43).

jurisdiction, and the very inconvenience, expense, and embarrassment Congress sought to avoid when it added the jurisdictional limitation 137 years ago."). But the Government misses the point – Argueta's motion does not amount to a new habeas petition, and the forum-shopping concerns articulated do not have the vigor in the context of a Rule 60(b) motion.

In actuality, the Rule 60(b) context raises new forum-shopping concerns, not on the part of the petitioner but instead the Government. Should *Endo* not apply in the Rule 60(b) context, then the Government – as Argueta correctly notes – "would effectively be permitted to forum shop if the sudden transfer of a detainee resulted in the loss of jurisdiction over a prolonged detention habeas." Appellant's Br. 30. In other words, the Government could willingly transfer an ICE detainee seeking habeas relief from continued detention to a jurisdiction that is more amenable to the Government's position, or the Government could transfer an ICE detainee for the purpose of intentionally introducing complicated jurisdictional defects to delay the merits review of already lengthy § 2241 claims. Taken to an extreme, the Government could transfer a petitioner with such consistency as to evade a district court ever even obtaining jurisdiction over a petitioner's § 2241 claims.

These forum-shopping concerns intensify when the § 2241 petitioner is an ICE detainee. According to Argueta, the Government has "broad authority to move ICE detainees," which occurs "often . . . without notice." Appellant's Br. 30 n.3. The frequency and circumstances surrounding such

29

transfers can have negative repercussions on ICE detainees, particularly those seeking federal habeas relief. *See, e.g.*, *id.* (indicating that the Government "often repeatedly" moves ICE detainees to "remote locations far from counsel or their community" without informing counsel of the transfer or updating the "ICE detainee locator"). As noted, the Government has transferred Argueta at least 15 times to 6 different facilities in 4 different states. When continuous transfer permeates the reality of ICE detention, it suggests that the Government has the machinery already in place to permit extensive forum shopping. Allowing a district court to retain jurisdiction for *all* post-filing proceedings, including a Rule 60(b) motion, despite a detainee's transfer out of the territorial jurisdiction of the district court in which the § 2241 petition was filed, would minimize incentives for Government abuse of the already turbulent ICE transfer process. *See Catanzaro*, 138 F.2d at 101 ("[W]here one has become subject to the jurisdiction of a court, *the jurisdiction continues in all proceedings arising out of the litigation* such as appeals and writs of error.") (emphasis added); *see, e.g.*, Tulane University Law School Immigration Rights Clinic, *No End in Sight: Prolonged and Punitive Immigration Detention in Louisiana* (2021) (discussing "shadow wins" – voluntary administrative releases of ICE detainees petitioning for habeas relief made prior to a habeas court's merits determination – and suggesting that these "wins" may allow the Government "to avoid negative court decisions that make formal rulings regarding prolonged, indefinite and punitive detention")

30

* * * * *

In sum, it was in error for the District Court to hold that it lacked jurisdiction over Argueta's habeas petition despite his transfer out of its territorial jurisdiction. An ICE detainee's Rule 60(b)(6) motion should be treated as a true Rule 60(b) motion, and not a successive habeas petition, unless it "seeks vindication" of a "claim." As Argueta's motion neither raised new grounds for relief nor attacked the District Court's prior ruling on the merits, the District Court erred in construing Argueta's motion as a new habeas petition. Given that his motion did not amount to a new habeas petition, the District Court's determination as to the effect of his transfer on its jurisdiction was fatally flawed. Rather, after a district court acquires jurisdiction over an ICE detainee's § 2241 petition for relief from continued detention, the Government's transfer of the detainee outside of the court's territorial jurisdiction does not strip that court of jurisdiction to entertain a true Rule 60(b) motion filed subsequent to the transfer.

Therefore, we reverse the District Court's decision and remand for further proceedings consistent with this opinion, to include, should it be necessary, addressing whether it "may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release," *Padilla*, 542 U.S. at 441, or transfer Argueta's § 2241 proceedings to another court's jurisdiction.

31

## C.

Argueta urges us to reach the merits of his motion to reopen, suggesting that our evaluation of the motion's substance should hinge on whether his prolonged detention qualifies as an "extraordinary circumstance."[7]

---

[7] Argueta seemingly weaves into his analysis an argument that we should also evaluate whether the prolonged detention claim forming the basis of his underlying § 2241 petition warrants relief. While his prolonged detention claim might merit relief in some circumstances, we lack appellate jurisdiction to make this determination. Argueta has not appealed the District Court's October 2019 denial of his § 2241 petition. Rather, pursuant to the notice of appeal filed August 10, 2020, he confines the scope of our review to the District Court's denial of his motion to reopen – which, again, we are construing as a Rule 60(b)(6) motion. As relevant here, an appeal limited to review of a district court's denial of a Rule 60(b) motion does not subsume review of the appellant's underlying habeas petition. *See Browder v. Dir. Dep't of Corrs.*, 434 U.S. 257, 263 n.7 (1978) ("[A]n appeal from denial of Rule 60(b) relief does not bring up the underlying judgment for review."); *Norris v. Brooks*, 794 F.3d 401, 405-06 (3d Cir. 2015); *see also Wenger v. O'Brien*, 221 F.3d 1340, 2000 WL 874844, at *1 (7th Cir. 2000) (unpublished table decision) (applying *Browder* when the appellant's underlying habeas petition arises pursuant to § 2241). Therefore, we reserve any judgment on the merits of Argueta's § 2241 petition and leave it to the District Court on remand to consider, if necessary, whether his prolonged detention claim warrants relief.

The District Court denied Argueta's motion to reopen on threshold issues without performing the requisite substantive analysis pursuant to Rule 60(b)(6).  Because we lack a decision from the District Court on whether the merits of Argueta's motion warrant relief – and because "[t]he grant or denial of a Rule 60(b)(6) motion is an equitable matter left, in the first instance, to the discretion of a district court" – we leave it to the District Court on remand to discuss in the first instance whether Argueta satisfies the requisite standard under Rule 60(b)(6).  *Cox v. Horn*, 757 F.3d 113, 124 (3d Cir. 2014); *accord Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 149 (3d Cir. 2016) ("As a general rule, 'a federal appellate court does not consider an issue not passed upon below.'") (quoting *Singleton v. Wulff*, 428 U.S. 106, 120 (1976)); *PDK Laby's, Inc. v. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment) (reiterating "the cardinal principle of judicial restraint – if it is not necessary to decide more, it is necessary not to decide more").

## IV.

For these reasons, we will reverse the order of the District Court denying Argueta's motion to reopen and remand for further proceedings consistent with this opinion.